UNITED STATES of America, Appellee,

v.

Cornelius FRANKLIN, Appellant.

No. 83–1286.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1983.

Decided Feb. 22, 1984.

McMILLIAN, Circuit Judge.

Cornelius Franklin appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri after a non-jury trial on stipulated facts finding him guilty of one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Franklin to three years imprisonment followed by three years of special parole. For reversal Franklin argues that the district court erred in (1) finding that the custodial arrest for minor traffic violations and the search incident thereto was lawful, (2) admitting into evidence Detective Thomure's testimony concerning the average dosage unit of cocaine, and (3) finding the evidence sufficient to establish the element of intent to distribute. For the reasons discussed below, we reverse and remand for resentencing for possession only.

At approximately 6:50 a.m. on August 31, 1982, St. Louis Police Officer Steven Olish, a ten-year veteran of the St. Louis Police Department, was on patrol in the City of St. Louis. While in his patrol vehicle at the intersection of Hodiamont, Skinker and Horton Streets, Officer Olish observed a 1960 Thunderbird drive through a red light traffic signal. Officer Olish followed the Thunderbird and signaled its driver to pull over. Both vehicles stopped a short distance away. Officer Olish immediately radioed in his location and the Thunderbird's license plate number, but received no information that the license or car was stolen or in any way suspicious.

Franklin, the driver of the Thunderbird, got out of his car and walked toward Officer Olish's patrol car. He was dressed in his St. Louis City Fire Department uniform. Franklin apologized to Officer Olish, explaining that he was in a hurry and would get in trouble if he was late for work.

Upon request, Franklin produced a Missouri state identification card and a Missou-

Thomas E. Dittmeier, U.S. Atty., Larry D. Hale, Asst. U.S. Atty., St. Louis, Mo., for appellee.

John E. Bell, St. Louis, Mo., for appellant.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and DUMBAULD,* Senior District Judge.

---

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Honorable H. Kenneth Wangelin, United States Senior District Judge for the Eastern District of Missouri.

ri driver's license bearing his name. The driver's license had expired, and the photograph on the license had been completely burned off. Officer Olish asked Franklin about the ownership and registration of the Thunderbird and whether he had another driver's license. Franklin stated that he had owned the Thunderbird for a couple of months and that he did not have an additional driver's license. Officer Olish noted, however, that the car had Kentucky plates, no Missouri state inspection sticker and no appropriate St. Louis City or County permit.

Officer Olish then placed Franklin under formal arrest, even though the traffic violations were normally considered "release on street" offenses. Franklin was not advised of his rights at this time. Statements made after his arrest were subsequently suppressed.

During a pat-down search for weapons Officer Olish felt a bulge in Franklin's left sock. Officer Olish retrieved two clear plastic bags containing a white powdery substance, which was later identified as 35 grams of 42% pure cocaine (14 grams of 100% pure cocaine). Upon finding the cocaine, Olish told Franklin that he was under arrest for narcotics violations and at that time advised him of his constitutional rights. Over Franklin's objection, it was stipulated that a narcotics agent would testify that the average dosage unit of cocaine was approximately one-quarter of a gram. Further, it was stipulated that the amount of cocaine seized had an approximate street value of $3,000.00.

## ARREST

Franklin first argues that the custodial arrest for minor traffic violations was unlawful and therefore the evidence found in the search incident to arrest should have been suppressed. Franklin challenges the authority of an officer to make a formal arrest for traffic violations characterized as "release on street" offenses for which a summons is ordinarily issued on the scene. In support of this argument Franklin primarily relies on Mo.Ann.R. 37.09 (Vernon 1981)[2] and various provisions of the St. Louis Metropolitan Police Department's General Order Concerning Traffic Stops.[3]

**2.** Mo.Ann.R. 37.09 (Vernon 1981) provides in part: "In any case in which it is lawful for an officer to arrest a person without a warrant, he may serve such person with a summons instead of arresting the accused."

**3.** St. Louis Metropolitan Police Department's General Order Concerning Traffic Stops states in part:

1. *Misdemeanor and Felony Traffic Charges Requiring Booking*
   a. *Charges Requiring Booking.* The following misdemeanor and felony traffic charges or circumstances require that the violator be formally arrested and booked, with bail required for release: (Court appearance required in all cases.)
   (1) Manslaughter or Homicide (Traffic Deaths)
   (2) Leaving the Scene of a Motor Vehicle Accident
   (3) Driving While Intoxicated
   (4) Driving While License Suspended/Revoked
   (5) Defendant chooses to be formally arrested rather than surrender his driver's license.
   (6) Defendant arrested because officer feels he has insufficient identification to insure his appearance in court.

   (7) Defendant neither resides nor is employed in St. Louis City or County.
   . . . .
   (8) Misdemeanor traffic bench warrant
   (9) Defendant refuses to sign traffic ticket.
   . . . .
2. *Misdemeanor Traffic Charges Requiring Court Appearance (Release on Street Provision)*
   a. *Charges Requiring Court Appearance.* The following misdemeanor traffic charges require the appearance of the defendant in the Circuit Court; however, the violator may be released on the street on such charges without being booked:
   (1) Displaying Colored Headlights (yellow/amber)
   (2) No Chauffeur's License
   (3) No Driver's License
   (4) Operating a (Motorcycle, Motor Scooter, Motor Bike) Without Proper State Operator's License
   (5) Permitting Unlicensed Person to Drive
   (6) Permitting Unlicensed Person to Operate a (Motorcycle, Motor Scooter, Motor Bike)
   . . . .
3. *Misdemeanor Traffic Charges Payable at the Circuit Court Traffic Violation Bureau (Release on Street Provision)*

■ A lawful arrest based on probable cause justifies a warrantless search of the arrestee for either weapons or evidence. *Michigan v. DeFillippo,* 443 U.S. 31, 40, 99 S.Ct. 2627, 2633, 61 L.Ed.2d 343 (1979); *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); *Adams v. Williams,* 407 U.S. 143, 148–49, 92 S.Ct. 1921, 1924–1925, 32 L.Ed.2d 612 (1972).[4] The constitutional reasonableness of an arrest and search incident thereto is not affected by the absence of a police regulation requiring that a police officer take a person into custody for the particular offense or departmental policy establishing the conditions under which a full body search should be conducted. *Gustafson v. Florida,* 414 U.S. 260, 265, 94 S.Ct. 488, 491, 38 L.Ed.2d 456 (1973). Thus, the validity of a discretionary full custody arrest and full-scale body search of an offender arrested for a minor traffic violation has been upheld. *Id.*

After a careful examination of the regulations at issue, we conclude that Officer Olish was not prohibited from arresting Franklin for various state and local traffic violations. The language of the relevant provisions is permissive, vesting the officer with the discretionary authority to evaluate the situation and determine whether or not to adhere to formal arrest procedures.

■ Officer Olish personally observed Franklin violate several traffic regulations. Franklin also failed to adequately explain the absence of Missouri license plates, a Missouri vehicle inspection sticker, and an appropriate city or county permit. We hold that Officer Olish's discretionary full custody arrest of Franklin was based on probable cause and thus the arrest and search incident thereto were constitutionally permissible under the fourth amendment.[5]

## EXPERT TESTIMONY

Franklin also argues that the district court erred in admitting into evidence Detective Thomure's testimony concerning the average dosage unit of cocaine. This testimony was relevant to the issue of intent to distribute. It is undisputed that the average dosage unit of cocaine is not information within the common knowledge of lay

---

a. *Charges payable at the Circuit Court Traffic Violation Bureau.* The following misdemeanor traffic charges are normally payable at the Circuit Court Traffic Violation Bureau without the requirement for booking or a police report:
  1. Expired State Vehicle License
  2. Failure to Display Two Vehicle License Plates
  3. Failure to Display Valid Certificate of Inspection
  4. Failure to Heed Restrictions on Driver's License
  5. Improper State Vehicle License
  6. Lending Driver's License to Someone Else
  7. No Trailer License
  8. No State Vehicle License

4. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973).

5. Franklin cites state court decisions which have considered and refused to sustain the validity of full custodial arrests for minor traffic violations. *See, e.g., State v. Martin,* 253 N.W.2d 404 (Minn.1977); *State v. Hehman,* 90 Wash.2d 45, 578 P.2d 527 (1978) (en banc). These cases can be distinguished from the case before us. In those cases either (1) state or municipal laws required that a summons be issued absent specifically defined circumstances, *State v. Martin,* 253 N.W.2d at 406, or (2) the state courts decided to accord criminal defendants greater rights than those minimally required by the United States Constitution, *State v. Hehman,* 578 P.2d at 529. Like the dissenting justices in *Robinson,* we are concerned with "the possibility that a police officer, lacking probable cause to obtain a search warrant, will use a traffic arrest as a pretext to conduct a search." *United States v. Robinson,* 414 U.S. at 248, 94 S.Ct. at 482. *See* 1 W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 5.2, at 283 (1978). However, the facts of this case do not indicate that the arrest was in any way pretextual.

persons. The district court therefore admitted Thomure's testimony as expert testimony pursuant to Fed.R.Evid. 702.[6] Franklin argues that the district court abused its discretion in finding Thomure qualified as an expert because there was no stipulation about Thomure's qualifications as an expert. Thomure did testify that he had been a city police officer for seven and one-half years and had been assigned to the narcotics enforcement team for ten months.

In light of our disposition of the intent to distribute issue on other grounds, we do not decide whether the district court's decision to admit Thomure's testimony as expert witness testimony was "manifestly erroneous."[7] We note, however, that although experience may qualify an individual as an expert witness, Thomure had been assigned to the narcotics enforcement team for only ten months[8] and there was no showing that he had received special training about dosage units as a member of the enforcement team.

SUFFICIENCY OF THE EVIDENCE

Finally, Franklin argues that the evidence was insufficient as a matter of law to establish the requisite intent to distribute. Franklin does not dispute that he knowingly and intentionally had in his possession approximately 35 grams of 42% pure cocaine at the time of his arrest. In order to establish a violation of 21 U.S.C. § 841(a)(1), the government must also prove that Franklin had the "specific" intent to distribute the controlled substance.

■ This court's role in reviewing a criminal conviction is limited. Taking the view most favorable to the government, we must affirm the conviction if supported by substantial evidence. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hutchinson,* 488 F.2d 484, 489 (8th Cir.1973), *cert. denied,* 417 U.S. 915 (1974). The government offered no direct evidence of distribution. The district court inferred intent to distribute cocaine from the quantity of cocaine involved. Intent to distribute may be established by circumstantial evidence. *United States v. Hollman,* 541 F.2d 196, 199 (8th Cir.1976). Intent to distribute a controlled substance has been inferred solely from possession of a large quantity of the substance. *See United States v. Koua Thao,* 712 F.2d 369, 371 (8th Cir.1983) (154.74 grams of opium); *United States v. DeLeon,* 641 F.2d 330, 335 (5th Cir.1981) (294 grams of cocaine); *United States v. Grayson,* 625 F.2d 66, 67 (5th Cir.1980) (413.1 grams of 74% pure cocaine); *United States v. Love,* 599 F.2d 107, 109 (5th Cir.) (26 pounds of marijuana), *cert. denied,* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312 (1979); *United States v. Edwards,* 602 F.2d 458, 470 (1st Cir.1979) (200 grams of heroin); *United States v. Smith,* 595 F.2d 1176, 1181 (9th Cir.1979) (360 grams of heroin); *United States v. Hill,* 589 F.2d 1344, 1350 (8th Cir.) (625,000 dosage units of a diet pill), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); *United States v. Muckenthaler,* 584 F.2d 240, 247 (8th Cir.1978) (147.09 grams of cocaine); *United States v. Powell,* 564 F.2d 256, 259 (8th Cir.1977) (50 ounces of heroin), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55

---

**6.** Fed.R.Evid. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

**7.** Whether a witness is qualified within the meaning of this rule is a preliminary question for the trial judge under Fed.R.Evid. 104(a), and this determination will not be disturbed unless "manifestly erroneous." *United States v. Tovar,* 687 F.2d 1210, 1215 (8th Cir.1982) (quoting *Salem v. United States Line Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962)).

**8.** Persons permitted to testify as expert witnesses about controlled substances and narcotics activities generally have had several years experience in drug-related fields. *See, e.g., United States v. Pugliese,* 712 F.2d 1574, 1581 (2d Cir.1983) (at least fourteen years as drug enforcement agent); *United States v. Carson,* 702 F.2d 351, 369 (2d Cir.1983) (twenty years as drug enforcement agent); *United States v. Luschen,* 614 F.2d 1164, 1169 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980) (eighteen years as public health chemist).

L.Ed.2d 495 (1978); *United States v. Echols,* 477 F.2d 37, 40 (8th Cir.) (199.73 grams of cocaine), *cert. denied,* 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973); *United States v. Mather,* 465 F.2d 1035, 1037–38 (5th Cir.) (197.75 grams of cocaine), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 685, 34 L.Ed.2d 672 (1972); *United States v. Contreras,* 446 F.2d 940, 942 (2d Cir.1971) (690 grams of 17.7% pure cocaine).

■ However, "[p]roof of possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which an intent to distribute may be inferred." *United States v. Washington,* 586 F.2d 1147, 1153 (7th Cir.1978) (possession of 1.43 grams of cocaine). *See also Turner v. United States,* 396 U.S. 398, 422–23, 90 S.Ct. 642, 655–656, 24 L.Ed.2d 610 (1970) (possession of 14.68 grams of 5% pure cocaine insufficient to sustain inference of intent to distribute); *United States v. Bailey,* 691 F.2d 1009, 1019 n. 13 (11th Cir.1982) (possession of 3.4 grams of cocaine insufficient to raise inference of intent to distribute), *cert. denied,* —— U.S. ——, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983); *United States v. Olvera,* 523 F.2d 1252, 1253 n. 1 (5th Cir.1975) (possession of 1.84 grams of 16.8% pure cocaine too small an amount to raise inference of intent to distribute); *Bentley v. Cox,* 508 F.Supp. 870, 877 (E.D.Va.1981) (possession of 73 grams of marijuana not inconsistent with possession for personal use); *United States v. Owens,* 344 F.Supp. 1355, 1356 (E.D.Wis.1972) (possession of 26 grams of heroin, standing alone, insufficient evidence of intent to distribute), *aff'd,* 475 F.2d 759 (5th Cir.1973).

Admittedly, courts have sustained the inference of intent to distribute in cases involving quantities of drugs comparable to the amount found in Franklin's possession at the time of his arrest. However, in each case the government's proof included additional circumstances or evidence consistent with an intent to distribute narcotics. For example, in *United States v. Ramirez-Rodriquez,* 552 F.2d 883 (9th Cir.1977), although the amount of cocaine seized was less than 10 grams when calibrated at its pure level, other circumstances convinced the court that there was sufficient evidence of intent to distribute.

First, there was evidence that the quantity of cocaine found was "very unusual" in the context of the prison setting and that prison authorities almost never found any narcotics in that quantity.

Second, evidence of resale value of the drug may support an inference of intent to distribute. Here the evidence showed that procaine found with the cocaine could be used to dilute the latter so that it would be possible to make approximately 260 "bindles" of 15% pure cocaine that would sell for $10 each in the institution. From the evidence it would be reasonable for the jury to infer that the resale value of the cocaine was $2,600. The figure is significant and the jury could conclude that the cocaine was not possessed merely for "personal use."

Third, whether the defendant is addicted to the drug found in his possession is another consideration in determining whether there was sufficient evidence of intent to distribute. A finding of addiction may support an inference that a larger quantity of the drug may be kept for personal use. Here, however, the defendant testified that he was a heroin addict and that he did not like to use cocaine.

The amount of the cocaine seized, in light of these additional circumstances, provided relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt, that the appellant possessed the cocaine with the intent to distribute it.

*Id.* at 885 (citations omitted).

In *United States v. Raper,* 676 F.2d 841 (D.C.Cir.1982), assessing the sufficiency of the evidence on intent to distribute, the court made the following observations.

Childs was found at the scene of the crime in possession of a quantity of heroin in his underwear that was far greater than that "needed" for "personal use." Our decision in *United States v. Staten,* 581 F.2d 878, 886 (D.C.Cir.1978), by Judge

Robinson states: "Our decisions in the recent past have made clear that intent to distribute may be inferred from possession of drug-packaging paraphernalia or of a quantity of drugs larger than needed for personal use." In our judgment the packaging and concealment here of the amount of heroin that exceeded the amount necessary for the possessor's immediate personal use, and the possession of such heroin on the street in an area known for its "high narcotic trafficking of heroin" also tends to support an intent to distribute.

In addition to the fact that the quantity indicates an intent to distribute, after the Third Man handed Raper some paper money, Childs was seen by Officer Francis to reach into his trench coat pocket, where he had access to heroin (in "quarters"), and then, after extracting his hand, to place it in the palm of the Third Man, who immediately closed his hand and walked away. The amount of money found on Raper's person immediately after his arrest was approximately the price then being charged for a "quarter" of heroin. On all of such evidence the jury found that Childs beyond a reasonable doubt was guilty of possession of heroin with intent to distribute.

*Id.* at 845 (citations omitted). *See also United States v. Fitzgerald,* 719 F.2d 1069 at 1072 (10th Cir.1983) (possession of 33 grams of 70% pure amphetamine and 25 grams of 47% pure cocaine, with an aggregate value of $18,400, and sensitive weighing scales supported inference of intent to distribute); *United States v. Gooding,* 695 F.2d 78, 84 (4th Cir.1982) (possession of 25.65 grams of 41% pure cocaine worth $6,000 "packaged in a way typical . . . of the packaging used by narcotics distributors to maintain the drug's texture" supported inference of intent to distribute); *United States v. Marszalkowski,* 669 F.2d 655, 662 (5th Cir.) (possession of 38.2 grams of at least 84% pure cocaine, a cutting substance, a large amount of cash and a weapon justified inference of intent to distribute), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982); *United States v. Burns,*

624 F.2d 95, 102 (10th Cir.) (possession of 100% pure cocaine, a trip from San Diego to Denver, a rented motel room and weighing equipment supported inference of intent to distribute), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *United States v. Hollman,* 541 F.2d 196, 199 (8th Cir.1976) (possession of heroin package in 127 separate foil packets consistent with intent to distribute); *United States v. James,* 494 F.2d 1007, 1030 (D.C.Cir.) (possession of significant numbers of glassine bags, assorted cutting and weighing paraphernalia, and address books containing notations in terminology used in the trafficking of narcotics supported inference of intent to distribute), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *United States v. Blake,* 484 F.2d 50, 58 (8th Cir.1973) (possession of 14.3 grams of 17.3% pure heroin, a bottle of· quinine, a mirror, two playing cards, and testimony that purity level exceeded average street purity level sustained inference that substance not for personal consumption), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Moses,* 360 F.Supp. 301, 303 (W.D.Pa.1973) (possession of weapon and heroin packaged in the manner commonly used in illegal street distribution supported inference of intent to distribute).

■ In the instant case the cocaine was not packaged in a manner consistent with distribution. Further, despite a complete search of Franklin, his automobile and his residence, the government offered no evidence of distribution paraphernalia, amounts of cash, weapons, or other indicia of narcotics distribution. A search of authority fails to reveal a single case in which the amount of cocaine possessed by Franklin, without more, constitutes sufficient evidence from which intent to distribute can be inferred. Thus, we hold the evidence that Franklin possessed the cocaine with the requisite intent to distribute it insufficient as a matter of law.

■ In finding Franklin guilty of possession of a controlled substance with the intent to distribute, the district court necessarily found all the elements of simple pos-

session in violation of 21 U.S.C. § 844. Therefore, we reverse and remand for the entry of judgment accordingly and for re-sentencing on this lesser included offense. 28 U.S.C. § 2106; *United States v. Swiderski,* 548 F.2d 445, 452 (2d Cir.1977).