825 F.2d 408
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric POKROSS, Defendant-Appellant.
 No. 86-5125
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1987.
Decided July 20, 1987.
 
 Kevin B. Zeese (John Flowers Mark; Michael S. Lieberman; John Kenneth Zwerling; Zwerling, Mark, Ginsbert and Lieberman, P.C., on brief), for appellant.
 John Thomas Martin, Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant, Eric Pokross, challenges his conviction in the United States District Court for the Eastern District of Virginia (Hilton, J., sitting without a jury) for possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a). The sole issue raised by this appeal is the sufficiency of the evidence presented during trial.
 
 
 2
 On March 24, 1986, Detective Joseph Grimes of the Federal Aviation Administration (FAA) Police assigned to the Drug Enforcement Administration's (DEA) Mass Transportation Detail and DEA Special Agent Kenneth Rosel approached Pokross and the latter's female companion at National Airport after Pokross had retrieved a small bag in the baggage claim area following the arrival of Pokross and his companion on an Eastern Airlines Shuttle flight from New York City. Grimes and Rosel identified themselves to Pokross as law enforcement officials and asked to speak with Pokross. The latter agreed, and upon request of the agents, showed them his flight ticket and his New York driver's license. Grimes asked Pokross if he was carrying any drugs and Pokross answered in the affirmative. Pokross removed two plastic zip-lock bags from his left coat pocket. After the bags were determined to contain 3.6 ounces (103.13 grams) of 97.6% pure cocaine, Pokross was arrested. A subsequent search of Pokross, his companion and their baggage did not reveal any implements of cocaine ingestion or distribution or any other contraband.
 
 
 3
 Prior to trial, Pokross and the government entered into a stipulation with respect to the details surrounding Pokross' arrest. During trial, Pokross admitted that he was guilty of possession of cocaine, but denied that he had possessed the cocaine with intent to distribute it, maintaining that the cocaine was for his personal use.
 
 
 4
 During the trial before Judge Hilton, DEA Special Agent John Lee testified that, in his opinion as an expert in the field of narcotics trafficking, the quantity of cocaine carried by Pokross was sufficiently large so as to be inconsistent with personal use and so as to be consistent with distribution. Lee also stated that the street value of such a quantity of virtually uncut cocaine was approximately $60,000 dollars; that 103.13 grams of 97.6% pure cocaine represents about 1200 dosage units, once it is cut, for a person who snorts cocaine; that an average cocaine user takes about three such dosages per day; and that an individual freebasing cocaine uses approximately one gram of pure cocaine three to five times per week. Thus, according to Lee, 103.13 grams of 97.6% pure cocaine provides an estimated 400-day supply for an individual who snorts cocaine and approximately a 20-week supply for an individual who freebases cocaine. Lee also testified that an individual who consumes an inordinate amount of cocaine usually possesses certain symptoms, including hyperactivity, paranoia, scar tissue around his nose area and dilated pupils. Further, on redirect examination, Lee testified that 'in most instances a person only stores usually a few dosage units for himself . . . for any given length of time.'
 
 
 5
 During cross-examination, Lee testified that a cocaine buyer could probably obtain higher quality cocaine more easily in New York, a source city, than in the Washington, D.C. area; that it might be reasonable, given the risk of transporting cocaine, for a heavy cocaine user to buy a large supply of the narcotic at one time in a source city; and that, in a previous trial, he had testified that an individual who heavily freebases cocaine could use up to one ounce of that drug per day. In addition, Lee conceded during recross examination that a decline in grades at college is consistent with the development of a drug problem. In that connection, there was evidence produced at trial that Pokross was registered as a full-time student at the University of Maryland from the fall of 1985 through May 1986; that he neither received financial assistance during the 1985-86 term nor applied for the same during the following term; and that his grades fell from a prior average of 2.9 to straight F's in five courses during that term.
 
 
 6
 Grimes testified that Pokross exhibited no unusual physical characteristics on the day of his arrest or on the day subsequent to his arrest which would have indicated that Pokross was a heavy cocaine user. Grimes also stated that possession of more than one ounce of cocaine is consistent with distribution though possession of 3.6 ounces is in a 'gray area.'
 
 
 7
 Pokross did not testify at trial. The only defense evidence presented was Pokross' New York driver's license and his University of Maryland college transcript.
 
 
 8
 Judge Hilton found Pokross guilty of possession of cocaine with intent to distribute, sentenced him to a two-year term, and suspended service of all but eight days of that sentence. Pokross has since completed service of that sentence.
 
 
 9
 In the within appeal, Pokross argues that the sole factor upon which the district court relied in convicting him of possession with intent to distribute was the quantity of cocaine, and that 3.6 ounces was an insufficient quantity, in and of itself, to convict him of intent to distribute without any other evidence to establish intent. The standard applicable in the context of such a challenge is set forth in Jackson v. Virginia, 443 U.S. 307, 318-19 (1979):
 
 
 10
 [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.' Woodby v. INS, 385 U.S. at 282 [1966] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 
 11
 Id. at 318-19 (emphasis supplied).
 
 
 12
 In order to convict an individual of possession with intent to distribute, the government must prove that the defendant knowingly possessed the narcotics and that he had the specific intent to distribute the narcotics. See United States v. Franklin, 728 F.2d 994, 998 (8th Cir. 1984); see also United States v. Gay, 774 F.2d 368, 372 (10th Cir. 1985). In this case, Pokross admits that he was in possession of the cocaine, but he contends that the cocaine was held by him only for his personal consumption. In United States v. Welebir, 498 F.2d 346, 350-51 (4th Cir. 1974), Judge Russell wrote: 'In the case of illicit drugs, intent to distribute may be inferred from the amount in possession. Whether the inference is warranted depends, of course, on the amount in possession.' See also United States v. Franklin, supra at 998-1001; United States v. Gooding, 695 F.2d 78, 84 (4th Cir. 1982).
 
 
 13
 Pokross asserts that in other cases in which a defendant has been convicted of intent to distribute a small quantity of narcotics, there have been specific indicia of intent to distribute[1] and that, in this case, such indicia are lacking. Pokross argues that the evidence presented during trial and the inferences drawn therefrom--that heavy users sometimes use up to one ounce of cocaine per day, that such persons might well travel to a source city to obtain higher quality cocaine more easily, and that a student who consumes large quantities of cocaine might experience a decline in his grades--combine to require the conclusion that he possessed the cocaine for his own personal use.
 
 
 14
 Pokross' said arguments may not prevail. The record discloses sufficient circumstantial evidence--other than the quantity of the cocaine--warranting the district court, as the factfinder, to conclude that Pokross intended to distribute the cocaine. First, the level of purity of the cocaine indicates that it was more likely possessed by a distributor than a personal user. Cf. Gay, supra; Stewart supra; United States v. Filipponio, 561 F. Supp. 750, 755 (N.D. Ill. 1983). Second, the testimony that 103.13 grams of 97.6% pure cocaine has a street value of $60,000 strongly suggests that the cocaine was more likely intended for distribution than for personal consumption. Cf. Gay, supra; United States v. Vergara, 687 F.2d 57, 62-63 (5th Cir. 1982); United States v. Riggins, 563 F.2d 1264, 1266-67, reh. denied, 566 F.2d 106 (5th Cir. 1977), cert. denied, 439 U.S. 848 (1978). Third, the testimony that 103.13 grams of 97.6% pure cocaine provides an average individual snorting cocaine with a 400-day supply and makes it possible for an average individual freebasing cocaine to have a sufficient quantity to last for twenty weeks, and that a user normally maintains a supply of cocaine for a short period of time, heavily supports the inference that Pokross did not purchase the cocaine for his personal use. Cf. Riggins, supra at 1267. Finally, at the time of his arrest and on the following day, Pokross did not display any of the physical characteristics usually associated with a heavy user of cocaine.
 
 
 15
 Pokross' reliance upon United States v. Levy, 703 F.2d 791 (4th Cir. 1983), is misplaced. In Levy, Judge Murnaghan concluded that the district court had erred in failing to instruct the jury that a possible verdict could have been either that the defendant was guilty of simple possession or of possession with intent to distribute. The defendant in that case possessed 4.75 ounces of nearly pure cocaine. Judge Murnaghan wrote that 'there was a substantial basis for an inference that the defendant might have possessed the cocaine only for his own consumption and not preliminary to sale or other distribution.' Id. at 792. In so doing, Judge Murnaghan noted that the amount of cocaine might reflect the 'costly nature of the habit', id., and that other paraphernalia for consumption were found. Id. Thus, in Levy, the question posed on appeal was whether the district court had properly instructed the jury that the evidence permitted findings that the defendant was guilty of either possession with intent to distribute or of simple possession.
 
 
 16
 In this case, Judge Hilton, sitting without a jury, considered both the possibility that Pokross possessed the cocaine for his personal use and the possibility that Pokross intended to distribute the cocaine. After so doing, Judge Hilton, as the factfinder, found beyond a reasonable doubt that Pokross possessed the cocaine with intent to distribute. In the light of the record before him, there was more than sufficient evidence to support such a finding by Judge Hilton. Accordingly, the judgment below is hereby affirmed.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 See generally Franklin, supra. For example, in Gay, supra at 373, and in United States v. Stewart, 770 F.2d 825, 832 (9th Cir. 1985), cert. denied, 106 S. Ct. 888 (1986), the defendants, inter alia, possessed dilutants; and in Gooding, supra at 84, the packaging of the drug, inter alia, indicated that it was held by the defendant for distribution