922 F.2d 842
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John BARNES, Defendant-Appellant.
 Nos. 90-5165, 90-5364.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1991.
 
 Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 John Barnes was convicted by a jury of conspiracy to distribute heroin and possession of heroin with intent to distribute, in violation of 21 U.S.C. Secs. 841 & 846. He was sentenced to ninety-seven months in prison. He now appeals the conviction, arguing that the evidence was insufficient to prove an intent to distribute, that certain evidence against him was improperly admitted, and that the indictment was legally insufficient. Finding these contentions to be without merit, we affirm.
 
 
 2
 * The central event in this case is a conspiracy between the defendant; James Frazier, his unindicted co-conspirator; and others, both here and abroad, to smuggle heroin from Nigeria into this country. The smuggling technique used, "swallowing," entails packing the heroin into balloons or condoms and swallowing them so as to avoid detection by customs agents. Frazier was the chief witness against Barnes at his trial. Both were employed by the Ford Motor Company at its glass plant in Nashville, Tennessee. Frazier, a drug-user, was once discharged by Ford for drug use. He was subsequently rehired, but his continued drug use lead Ford to condition his employment on treatment and counselling.
 
 
 3
 Frazier testified that he was in need of money and approached Barnes, who told him that he could earn $7000 by "swallowing" heroin in Nigeria and smuggling it into the United States. When Frazier agreed to do so, Barnes purchased the tickets needed for Frazier's trip to Nigeria by way of New York and told Frazier how to contact his Nigerian drug suppliers.
 
 
 4
 After Frazier arrived in Nigeria and "swallowed" some of the heroin supplied by Barnes's contacts, he decided to sample some of the inventory. The ensuing stupefaction caused him to miss his flight to New York. Frazier had to wait four days for the next flight out. He re-swallowed the items again the night before his rescheduled flight. Technical problems delayed his flight seven to eight hours. When he finally did leave, the delay caused him to excrete some of the swallowed packets on the plane. He then cleaned them and placed them in his pockets.
 
 
 5
 Frazier's behavior at the airport in New York alerted customs agents trained to detect drug smugglers. He was arrested, and the heroin seized and sent to the DEA drug lab. Frazier excreted the remaining heroin while in police custody. It was likewise sent to the DEA drug lab.
 
 
 6
 In exchange for leniency, Frazier agreed to assist DEA officials in obtaining evidence against Barnes. Frazier travelled to Nashville with some of the heroin, which he was now carrying in a suitcase. Barnes picked him up at the Nashville Airport and took the suitcase. Barnes was then arrested and subsequently charged with conspiracy to distribute heroin and possession with intent to distribute.
 
 
 7
 At trial, Barnes pled not guilty and affirmatively tried to establish his innocence. He claimed that a substantial judgment he won in a personal injury action had enabled him to purchase a chicken farm in Nigeria. As a result, he had become familiar with the various aspects of the Nigerian economy, including the gold trade. He conceded conceded that Frazier had approached him about making money from his Nigerian connections, but claimed that their discussions centered on importing gold, not smuggling heroin. He conceded further that he had paid Frazier's fare to Nigeria, but characterized his motive as charity, not criminal avarice.
 
 
 8
 Despite these claims of innocence and attempts to undermine Frazier's credibility, Barnes was convicted by a jury. After various post-trial motions, he appeals.
 
 II
 
 9
 Barnes concedes that the evidence at trial, taken in the light most favorable to the government, indicates that Frazier, at Barnes's urging and expense, traveled to Nigeria, where he ingested 123 balloons containing 347.1 grams of heroin. He concedes further that the evidence, taken in the same light, shows that Frazier returned to the United States, passed the balloons containing the heroin, placed a portion of the heroin in his suitcase at the urging of Barnes, and, upon his arrival in Nashville, handed over to Barnes the suitcase containing a portion of the heroin.
 
 
 10
 Appellant maintains that no evidence was presented at trial of his plans for the heroin after he received it from Frazier. Hence, the jury was required to infer the intent to distribute heroin from the circumstances. Appellant argues that the only piece of circumstantial evidence before the jury sustaining such an inference was the amount of heroin he received from Frazier. Corroborative evidence of an intention to distribute of the sort usually offered in these cases was not presented, he claims. For instance, the police search of appellant's home found no equipment for cutting and packaging the drugs for consumer distribution. In addition, as appellant repeatedly stresses, no expert testified that the quantity and purity of the drugs were in excess of the requirements for personal use, thereby laying a foundation for the inference that the drugs were for distribution.
 
 
 11
 Appellant relies upon United States v. Franklin, 728 F.2d 994 (8th Cir.1984), to argue the insufficiency of the evidence of an intention to distribute heroin. The Franklin court held that the evidence that the defendant possessed 35 grams of 42% pure cocaine with the requisite intent to distribute was insufficient as a matter of law, where "the cocaine was not packaged in a manner consistent with distribution," and despite a complete search of the defendant, his automobile, and his residence, the prosecution "offered no evidence of distribution paraphernalia, amounts of cash, weapons, or other indicia of narcotics distribution." Id. at 1000.
 
 
 12
 Barnes's use of Franklin implies that the only circumstantial evidence permitting a jury to infer an intention to distribute illegal drugs is either physical indicia of drug trafficking or expert testimony about the drugs demonstrating that their quantity or purity rules out the possibility of possession for personal consumption. However, physical evidence is not the only form of circumstantial evidence. Circumstantial evidence is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant. United States v. Ransom, 515 F.2d 885, 890 (5th Cir.1975). Intent may be inferred from circumstantial evidence. United States v. Lawson, 483 F.2d 535, 536 (8th Cir.1973), cert. denied, 414 U.S. 1133 (1974). An inference is a a deduction or conclusion which reason and common sense lead the jury to draw from facts which have been proved. United States v. Clark, 475 F.2d 240, 250 (2d Cir.1973). On appellate review, our object is to inquire whether the total evidence, including reasonable inferences drawn therefrom, when considered together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt. United States v. Edwards, 602 F.2d 458, 470 (1st Cir.1979). To sustain a conviction, the evidence need not preclude every reasonable hypothesis of innocence; the issue rather is whether a reasonable jury could find that the evidence established defendant's guilt beyond reasonable doubt. United States v. Cole, 755 F.2d 748, 755 (5th Cir.1985).
 
 
 13
 Hence, Barnes's reliance on Franklin does him less good than might appear. Franklin holds that an intention to distribute controlled substances in violation of the relevant statutes may be established by circumstantial evidence, including possession of a large quantity of drugs. 728 F.2d at 998. What circumstances, in addition to the quantity of drugs seized, will permit a jury to infer an intention to distribute is a question whose answer will vary from case to case. In the circumstances of Franklin, where the amount of drugs seized was relatively small (35 grams of 42% pure cocaine), and a thorough search of defendant's home and car revealed none of the indicia of drug-trafficking, the court found that the inference at issue could not be drawn by a reasonable juror. Nonetheless, in differing circumstances, possession of 27.4 grams of heroin, less than one tenth of the 347.1 grams seized in this case, has been found sufficient to sustain finding an intention to distribute. United States v. Richards, 638 F.2d 765 (5th Cir.), cert. denied, 454 U.S. 1097 (1981). This is particularly true where, as in this case, the circumstances of the case indicate the defendant took possession of the drugs as part of an well-organized effort involving several persons for moving the drugs artfully and clandestinely into or through the country in public channels of communication and commerce. E.g., Edwards, 602 F.2d at 470 (1st Cir.1979) (intent to distribute heroin found where defendant possessed 173.02 grams of heroin, which had been deposited at an airport for delivery in another state for delivery to defendant's house); United States v. Oates, 445 F.Supp. 351, 355 (E.D.N.Y.), aff'd in oral opinion, 591 F.2d 1332 (2d Cir.1978) (intent to distribute heroin found where 489 grams of heroin of approximate 36% purity were found taped to inside of defendant's thigh at airport, and where the defendant, on arriving at the airport the prior day, had met a man who was active in bringing buyers and sellers of illegal drugs together); United States v. Mora, 876 F.2d 76, 78 (9th Cir.1989) (intent to distribute heroin found where 387.6 grams of heroin were seized from defendant's carry-on luggage).
 
 
 14
 Such circumstances were not present in Franklin. They are present here. The Franklin jury had no evidence linking the defendant before it to drug trafficking for profit. The evidence linking Barnes to such an enterprise is strong.
 
 
 15
 Therefore, we are unwilling to conclude that no reasonable juror could have found, in view of the circumstantial evidence adduced at trial, that Barnes's purpose in sending Frazier to Nigeria was to acquire heroin for re-sale or other re-distribution in the United States. In addition to the quantity of heroin seized, there are other circumstances in the case that amply support a finding that Barnes sent Frazier to Nigeria to buy heroin for the purpose of reselling it in the United States. Barnes paid Frazier's fare to Nigeria, and agreed to pay him $7,000 for undertaking the journey. He told Frazier whom to contact. Those persons put Frazier up in a hotel, paid for his meals, and provided him with the drugs he swallowed, smuggled into the United States, and delivered to Barnes. Frazier's reception in Nigeria indicates that appellant either went there regularly himself or sent others there. Barnes's Nigerian connection betrays every sign of a continuing operation for commercial purpose. The jury was justified in inferring that appellant's purpose in sending Frazier abroad was to acquire drugs for subsequent resale.
 
 III
 
 16
 Barnes next challenges admitting into evidence the 72 balloons of heroin seized from Frazier at the New York airport and later picked up by appellant in the course of the DEA trap. The balloons were admitted as four separate exhibits numbered one through four. Appellant objects to the admission of all four on the grounds that a proper chain of custody was not established.
 
 
 17
 Appellant concedes that the usual chain of custody problem, mishandling of evidence by a police laboratory, is not present in this case. DEA Agent Myles, who handed the exhibits over to the DEA laboratory, testifies that he got them from Agent Keller, who got them from Agent Atwell. Nonetheless, according to appellant, in the case of all four exhibits, there was a fatal break in the chain before they got into the hands of Atwell. The first exhibit, appellant maintains, was taken from Frazier by Agent Snow and handed over to someone called Kal, but there is no record as to how it got from Kal to Atwell. Again according to appellant, there is no testimony that the second exhibit came from Frazier at all. In addition, Snow testified that the third exhibit went from Frazier to the DEA, but not to how it got there. The fourth exhibit went from the hospital to the DEA, but there is no record as to how it got there.
 
 
 18
 Even if the foregoing account of the DEA's handling of this evidence is taken as accurate, the trial court made no error in admitting the heroin exhibits. The integrity of the evidence is presumed to have been preserved by the government officials, unless there is some showing by the defendant of bad faith, ill will, or tampering. United States v. Gatewood, 786 F.2d 821, 825 (8th Cir.1986). The presumption against tampering is especially strong where, as here, government agents have followed officially prescribed routines in handling the evidence. See, e.g., United States v. Jones, 687 F.2d 1265, 1267 (8th Cir.1982); United States v. Luna, 585 F.2d 1, 6 (1st Cir.), cert. denied, 439 U.S. 852 (1978). If the defendant makes a minimal showing of improper motivation or tampering with the evidence, then the government must establish that precautions were taken to maintain the evidence in its original state. Gatewood, 786 F.2d at 825. Exhibits are admissible if they are in substantially the same condition as when the crime was committed. Id. The factors to be considered by the trial judge in deciding whether this criterion has been met include the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers having tampered with it. United States v. Gay, 774 F.2d 368, 374 (10th Cir.1985). An appellate court will not overturn the trial court's determination that the showing as to identity and nature of the exhibit is sufficient to warrant the admission of evidence except for a clear abuse of discretion. Id.
 
 
 19
 Appellant cannot prevail on this issue. He offers no evidence of tampering with the evidence by the DEA or abuse of discretion by the court except for the speculation that tampering with drugs is likely in drug cases as a general matter. This unsupported assertion does not rise even to the level of a minimal showing of tampering by government officials and provides us with no grounds for overturning the conviction.
 
 IV
 
 20
 Barnes's final ground of appeal is that his indictment for conspiracy to violate 21 U.S.C. Sec. 841(1)(a) was fatally defective because it failed to track the language of that statute and failed to allege that the purpose of the alleged conspiracy, violation of 21 U.S.C. Sec. 841(a)(1), was to have been accomplished knowingly and intentionally.
 
 
 21
 Barnes is correct in pointing out that the substantive offense underlying the conspiracy charge contains a scienter element. Section 841(a)(1) provides, in pertinent part, that "it shall be unlawful for any person knowingly or intentionally ... to distribute ... or ... possess ... with intent to distribute ... a controlled substance." (Emphasis supplied). However, the language of the conspiracy count of the indictment charges that James Frazier and John Barnes "did ... conspire ... with one another, and with diverse other persons ... to distribute or posess with intent to distribute heroin, a Schedule I controlled substance in violation of [21 U.S.C. Sec. 841(a)(1) ]." Relying on United States v. Pupo, 841 F.2d 1235, 1238-39 (4th Cir.1987), cert. denied sub nom. Govantes v. United States, 488 U.S. 842 (1988), Barnes's argument, as set forth in his brief, is that the indictment should have read that he "entered into the conspiracy 'knowingly and intentionally' " or that "the object of the alleged conspiracy [, possession of heroin with intent to distribute it and distribution of heroin, was] to have been accomplished knowingly and intentionally."
 
 
 22
 This contention is without merit. Pupo indeed holds that an indictment is defective if it fails to allege elements of scienter that are expressly contained in the statute that describes the offense. Id. Pupo's offense, however, was a substantive crime, not conspiracy. It is well settled that an indictment for conspiring to commit an offense need not allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy. United States v. Reynolds, 762 F.2d 489, 494 (6th Cir.1985) (citing Wong Tai v. United States, 273 U.S. 77, 81 (1927).
 
 V
 
 23
 For the foregoing reasons, the judgment below is AFFIRMED.