NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0245n.06
Filed: April 7, 2006

No. 04-2403

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MELVIN FUDGE, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS, Chief Judge; MOORE, and COOK, Circuit Judges.

COOK, Circuit Judge. Melvin Fudge appeals his convictions for drug related offenses committed in Grand Rapids, Michigan. Our review of his arguments regarding failure to instruct on possession as a lesser-included offense, a *Booker* challenge to the fine imposed, and the sufficiency of the evidence leads us to affirm.

Background

On March 5, 2004, members of the Grand Rapids Police Department ("GRPD") executed a search warrant at Fudge's apartment building. The officers tried to enter the apartment through trickery (by posing as UPS deliverymen and by attempting to tow Fudge's car), but after two failed attempts they entered by force. Once inside, the officers searched Fudge's apartment and other vacant apartments in the building without finding Fudge. While the officers continued to look for

Fudge, Steve Baribeau, a civilian who worked across the street from Fudge's building, alerted Detective Robert Stanton, who was standing on the front porch of the apartment building, that he had observed a sock being thrown from the apartment building onto the sidewalk in front of an adjacent building. Stanton pointed this out to Officer David Nowakowski, who retrieved the sock and secured it in his cruiser. It was later determined that the sock contained plastic baggies with 36 grams of crack and 33 grams of powder cocaine.[1]

As Nowakowski returned from his cruiser, he saw Fudge emerge from the basement and run into an alley. Nowakowski, aided by Officer Gene Tobin, caught up with Fudge and arrested him. Tobin placed Fudge in the backseat of a police cruiser and the officers continued to search the building. When Tobin returned to the cruiser, he sat down in the backseat next to Fudge. Tobin testified that he introduced himself as a detective with the GRPD and advised Fudge of his *Miranda* rights. After Fudge said he understood his rights, Tobin told him that the police were interested in him becoming an informant, but that "prior to being able to discuss that," Fudge "needed to be honest . . . about what was occurring on this incident." Tobin also told Fudge that the police had a witness who saw him throw the drug-filled sock out of an upstairs window of the building. Fudge then confessed to throwing the sock out of the window.

---

[1]The parties stipulated to the character and quantity of the drugs.

The search of Fudge's apartment resulted in the discovery and seizure of evidence, including: a police scanner programmed to GRPD frequencies (including the little-known Vice Unit frequency), a box of plastic baggies, a digital scale, a cell-phone, two-way radios, and a wallet with $597 in cash. Officers also noticed that the front and rear entrances of the building were monitored by surveillance cameras connected to televisions in Fudge's apartment. Additionally, the officers searched the entire building and "did not see any indications that any other person occupied or had recently occupied the other vacant apartments."

At trial, David Allen, Director of Lighthouse Communities, the non-profit housing organization that owned Fudge's apartment building, testified that at the time of the search Fudge was the only tenant in the building. Allen also testified that because his company was renovating the property he was often present on the premises. Allen then described unusual activity with respect to Mr. Fudge's apartment—people would often come to the door, stay a couple of minutes, and then leave.

Steve Baribeau, who worked across the street from Fudge's building, also testified that he noticed "unusual activity" taking place at Fudge's building—"there were a lot of very short visits over there. . . . [W]e'd see a car pull up or something, go up onto the porch, and if they were let in, they might be in for just a few minutes and then they'd leave and we saw that quite often." Kenneth Johnson, an employee at the store adjacent to Fudge's building, also testified that he witnessed "unusual activity" similar to that described by Baribeau.

In defense, Fudge testified that he found the police scanner in his apartment when he moved in and that the surveillance cameras were installed before he took possession of his apartment. With respect to the day of the search, Fudge testified that he went outside when he saw his car being towed. He told the truck driver he was going to go inside to get his keys, but when he went back inside he decided to get a drink of water because he was dehydrated on account of having just awakened. Finding the faucet broken, Fudge went to the basement to investigate the plumbing problem. While checking the pipes in the basement, Fudge testified that he heard walkie-talkies and eventually realized that the references to "the suspect" he was hearing over the walkie-talkies meant that the police were inside the building and were looking for him. Panicked, Fudge walked out of the basement where he was arrested and placed into a police cruiser. Fudge denied that Tobin ever introduced himself or advised him of his rights. Fudge also denied ever seeing the drug-filled sock and denied confessing to throwing the sock out of the window.

Fudge told the jury that he operated a business, "One Stone Clothing," out of his apartment, selling oils, incense, soap, recorded CDs, and T-shirts. To support this testimony, Fudge produced a business license issued by Kent County. On cross-examination, however, Fudge admitted he did not have a federal tax identification number, he did not keep tax records, he did not have a sign identifying his business, and he did not keep regular business hours.

Fudge also testified that he has been addicted to drugs "[o]ff and on since '90, '91," and that despite completing counseling for his cocaine addiction he was still using cocaine because he was "[j]ust addicted to it."

Before the case was submitted to the jury, Fudge requested that the district court instruct on a lesser-included offense of simple possession of cocaine. The court denied the request and the jury returned a verdict of guilty on both counts of the indictment. The court later sentenced Fudge to 168 months' imprisonment on Count 1, life on Count 2, and imposed a $10,000 fine.

## Lesser-Included-Offense Instruction

We review the district court's decision to deny the request for a lesser-included-offense instruction for an abuse of discretion. *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001) (citing *United States v. Ursery*, 109 F.3d 1129, 1136 (6th Cir. 1997)). "To find an abuse of discretion we must have a definite and firm conviction that the trial court committed a clear error of judgment." *Williams v. Eau Claire Pub. Schs.*, 397 F.3d 441, 445 (6th Cir. 2005) (quotation omitted).

A court should give a lesser-included-offense instruction when: "(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could

consistently acquit on the greater offense and convict on the lesser." *Colon*, 268 F.3d at 373 (citations omitted). It is generally reversible error to deny the request if all the requirements are satisfied. *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000).

Fudge, having requested the jury instruction for simple possession, and it being a lesser-included offense of possession with the intent to distribute, *see United States v. Sharp,*12 F.3d 605, 606 (6th Cir. 1993), satisfies the first two prongs of the test.[2] And assuming (discussed in greater detail below) Fudge possessed the charged drugs, our review must focus on the fourth prong—whether the district court abused its discretion in determining that the element differentiating the two offenses (the intent to distribute) was not in dispute to the extent that the jury could consistently acquit on intent to distribute and convict on simple possession.

The government argues that because Fudge "vigorously denied any connection to the charged [drugs] . . . [he] created a situation where the only disputed element was possession, not intent." The district court agreed, noting that although the differentiating element between the offenses is an intent to distribute, "that's not what's in contest here. What's in contest is the possessory interest in the cocaine." Because the court found that Fudge did not dispute the intent-to-distribute element, it declined to give the lesser-included-offense instruction.

---

[2]"A violation of 21 U.S.C. § 841(a), possession with intent to distribute, requires: (1) knowingly or intentionally, (2) possessing, (3) with the intent to distribute, (4) a controlled substance. A violation of 21 U.S.C. § 844(a), simple possession, requires: (1) knowingly or intentionally, (2) possessing, (3) a controlled substance." *United States v. Monger*, 185 F.3d 574, 577 n.2 (6th Cir. 1999).

Fudge concedes that he denied any "relationship" to the drugs, but argues that with his testimony about his long-standing drug addiction it "is conceivable that the jury would have discounted his explanation for the sock and found it to be an act of denial of an addict." From this, Fudge concludes that a properly instructed jury could have believed that he possessed the drugs for personal use. We find no abuse of discretion by the trial court in evaluating the request to instruct in light of the quantity of drugs involved.

Sentencing

Fudge's only challenge to his sentence concerns the imposition of $10,000 as unreasonable given his lack of means to pay. Fudge says the district court failed to consider the factors set forth in U.S.S.G. § 5E1.2(d) and in 18 U.S.C. §§ 3553(a) and 3572(a) before imposing the fine, and because the Guidelines were mandatory when the district court sentenced him, the case should be remanded for "reevaluation."

Fudge concedes that he posed no objection to the imposition of the fine in the district court. *Booker* had not been decided at the time of Fudge's sentencing, so we review his sentence for plain error. *United States v. Smith*, 429 F.3d 620, 625 (6th Cir. 2005). The government concedes plain error but opposes re-sentencing, arguing that Fudge cannot show that the error affected his substantial rights.

Generally, to demonstrate that the plain error "affected substantial rights," a defendant must show that the error was "prejudicial," which means that the error "must have affected the outcome of the district court proceedings." *United States v. Trammel*, 404 F.3d 397, 401 (6th Cir. 2005) (citations and quotations omitted). In cases where a defendant was sentenced under the mandatory Guidelines regime, prejudice may be presumed, but the presumption can be rebutted "where the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime." *United States v. Barnett*, 398 F.3d 516, 529 (6th Cir. 2005). The government argues this is one of those cases. The Guideline range for a fine was $15,000-$12,000,000, *see* U.S.S.G. § 5E1.2(c)(3), (4), and because the district court actually fined Fudge only $10,000 (to be paid in $10-per-month installments) the government argues that there is no prejudice—"[Fudge] would not have received a fine of even less than $10.00 per month [for a total of $10,000]," even had the district court known that the Guidelines were only advisory. We agree and we also determine the fine to be reasonable.

The district court imposed a fine below the applicable Guidelines range, explicitly considering at least two factors on the record—Fudge's ability to pay (including the ability to pay over a period of time), *see* U.S.S.G. § 5E1.2(d)(2), 18 U.S.C. § 3572(a)(1), and the sentencing ranges advised by the Guidelines, *see* 18 U.S.C. § 3553(a)(4). In its "Statement of Reasons" attached to the Judgment, the district court noted that the fine was below the Guidelines range because of Fudge's inability to pay. Furthermore, the court waived the interest requirement because it determined that Fudge did not have the ability to pay interest, and the court established a special

schedule of payments ($10 per month to be paid from prison earnings) to accommodate Fudge's present inability to pay the fine in a lump sum.

Because the district court's imposition of the fine reflects consideration of the very factors Fudge points to on appeal, we have no cause to remand.

Sufficiency of the Evidence

Fudge contends that his convictions must be reversed for insufficient evidence that he intended to distribute the seized drugs, because "proof of possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which an intent to distribute may be inferred." *United States v. Franklin*, 728 F.2d 994, 999 (8th Cir. 1984). Since Fudge moved for a judgment of acquittal at the close of the government's case without renewing his motion at the close of all the evidence, the "manifest miscarriage of justice standard governs [his] challenge to the sufficiency of the evidence." *United States v. Kolley*, 330 F.3d 753, 756 (6th Cir. 2003) (quotation omitted). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *United States v. Price,* 134 F.3d 340, 350 (6th Cir. 1998) (citation and quotations omitted).

Fudge directs the panel's attention to two cases from sister circuits to support his argument: *United States v. Stephens*, 23 F.3d 553 (D.C. Cir. 1994) and *Franklin*, 728 F.2d 994. These cases do not persuade us to reverse his convictions because Fudge was charged with possessing far more drugs than the defendants in the cited cases—33 grams of cocaine and 36 grams of crack. As Fudge acknowledges, "'intent to distribute a controlled substance [may be] inferred solely from possession

of a large quantity of the substance.'" *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991) (quoting *Franklin*, 728 F.2d at 998). An officer testified at trial that 36 grams of crack is the equivalent of 360 "rocks" of crack, with an average street value of over $7,000, whereas the "normal user amount" in Grand Rapids is under five rocks.

Unlike both *Franklin* and *Stephens*, where the government "offered no other evidence suggesting distribution," *Stephens*, 23 F.3d at 556, the government's proof here included additional circumstances and evidence consistent with an intent to distribute narcotics, including classic trappings of drug dealing—a digital scale, plastic baggies, a police scanner and surveillance cameras—plus testimony regarding "unusual visitation patterns" around Fudge's building and apartment.

Fudge fails to show a manifest miscarriage of justice here. We affirm.