989 F.2d 501
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward RICKS, Defendant-Appellant.
 No. 92-5503.
 United States Court of Appeals, Sixth Circuit.
 March 19, 1993.
 
 Before MILBURN and BATCHELDER, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Edward Ricks, appeals his conviction and sentence for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a), and for using or carrying a firearm during and in relation to a drug-trafficking offense, 18 U.S.C. § 924(c). We affirm.
 
 I.
 
 2
 On August 1, 1991, Detective Greg Bowman of the Chattanooga, Tennessee, Police Department Narcotics Division listened in on two telephone calls placed by a confidential informant ("CI") to an individual known to Detective Bowman only as Ed or Edward. In the first phone call, made at approximately 3:00 p.m., the CI said to the individual, whom he addressed as "Edward," "Well, I need it real bad." The individual responded, "Well, you know I always take care of you." In a second phone call to the same individual, made two or three hours later, the CI asked, "Are you doing anything?" The individual responded, "Yeah, come on, I can take care of you."
 
 
 3
 At approximately 8:00 p.m. that same day, four or five police officers, including Detective Bowman and Officer Sully Batts, also of the Chattanooga Police Department, executed a John Doe search warrant at 1510 North Orchard Knob. When they entered the house, they observed the defendant-appellant, Edward Ricks. The officers secured Ricks by placing him on the floor and then conducted a protective sweep that revealed Ricks had been alone in the house.
 
 
 4
 The officers searched the house.[1] In the kitchen, under some meat in the freezer compartment of the refrigerator, Detective Bowman discovered a package of what appeared to be crack cocaine. Detective Bowman testified that after cocaine was discovered in the freezer, he read Ricks his rights under Miranda v. Arizona, 384 U.S. 436 (1966).[2] Ricks indicated that he understood his rights. Bowman further testified as follows:
 
 
 5
 Q Now, after having read him these rights, did he have or ever make a statement to you at that time?
 
 
 6
 A Yes, sir, he did make a statement. He made the statement that he had kind of gotten out of the drug business, and I made a statement that from what I found, it didn't look like it, or something of that nature, and then he made the statement, well, I kind of got back in it.
 
 
 7
 Ricks, who testified at trial, denied having made such a statement.
 
 
 8
 Officer Batts searched the back bedroom of the two-bedroom house. In a bedroom closet, behind a boot, he discovered a package of what appeared to be crack cocaine. In the same closet, approximately one foot from the cocaine, was an unloaded shotgun that had one operable and one inoperable barrel. This bedroom contained mostly men's clothes. In the front bedroom, which contained mostly women's clothes, the police discovered another shotgun, with one shell in the chamber. In the top dresser drawer in the front bedroom was a loaded .22 caliber pistol. On top of the dresser were a wallet containing Ricks's identification and letters set to Ricks at this address. In the living room, behind a couch, police discovered a beeper. Expert trial testimony later established that a total of 11.6 grams of crack cocaine had been discovered.
 
 
 9
 On September 12, 1991, Ricks was indicted for possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a), and using or carrying a firearm during and in relation to a drug-trafficking offense, a violation of 18 U.S.C. § 924(c). Ricks filed motions to suppress the physical evidence from the search and the inculpatory statement. The district court denied the motions.
 
 
 10
 A jury trial took place on January 28 and 29, 1991. At trial, in a bench conference, Ricks objected to the introduction of evidence concerning a December 12, 1990 incident involving Ricks. In this incident, Ricks had been arrested along with a number of other individuals and charged with a drug offense. When he was arrested, Ricks did not have any drugs on his person, but he did have approximately $700 in cash and a beeper. Ricks testified that the $700 came from settlement of a lawsuit. The charge was later dismissed.[3] Following argument, the district court ruled that the evidence was admissible under Fed.R.Evid. 404(b) because it went to Rick's opportunity to deal drugs.
 
 
 11
 Several witnesses testified on Ricks's behalf at trial. His mother, who lived in the house with Ricks, testified that he had used his shotgun to hunt rabbits and squirrels. Keith Hood, a friend of Ricks who had known Ricks for two years, also testified. According to Hood, on the morning of Ricks's arrest, as Hood was leaving a store, he was approached by a man who was driving a white Audi. Hood testified that the man asked Hood to do him a favor. That favor was to place some crack cocaine in Ricks's refrigerator. Hood testified that he recognized the man but did not know his name, where he lived, or the license number of his car.
 
 
 12
 At approximately 3:45 p.m. that same day, according to Hood, the same man gave him two bags of crack cocaine and told him to place the larger bag in Ricks's refrigerator. The smaller bag was Hood's payment for doing this favor. Shortly thereafter, Hood went to Ricks's house. Present at the house were Ricks, Maurice Thompson, and two other individuals. Hood testified that while in the kitchen, ostensibly to get a beer from the refrigerator, he planted the cocaine in the freezer. On cross-examination, the government elicited a number of inconsistencies in Hood's testimony.[4] Part of Hood's testimony was corroborated by that of Maurice Thompson, who testified that he saw Hood get into the white Audi while it was parked down the street from the store.[5]
 
 
 13
 Ricks took the stand. He testified that the shotgun found in the back bedroom belonged to a friend, who had left it at Ricks's house. He also testified that he had bought the .22 pistol for his mother for self-protection. Ricks denied knowledge or ownership of the cocaine in the freezer or the closet, denied having talked with the CI on the telephone on August 1, 1990, denied that the beeper found in the living room was his, and denied having made the statement to Detective Bowman about getting back into drugs. When questioned about the fact that other individuals had been prosecuted for drugs in connection with the December 12, 1990, incident, Ricks maintained that "I don't deal with drugs." He also maintained that a beeper found in his possession following during the December 1990 arrest was used to enable customers to contact him to get him to work on their cars.
 
 
 14
 On rebuttal, two police officers testified concerning the December 12, 1990 arrest. Officer Corliss Cooper, who was part of the police team that made the arrest, testified that prior to his arrest, Ricks had been seen at the back of a truck with several other individuals when cocaine was being passed around. At the time of the arrest, Ricks was at the back of the truck with four individuals who had cocaine on their persons. Officer Jeff Gannaway, who also was involved in the arrest, testified that when arrested, Ricks maintained that the $700 came, not from the settlement of a lawsuit, but from cleaning cars.
 
 
 15
 Ricks was found guilty on both counts. On April 6, 1992, he was sentenced to 86 months incarceration on the drug count and 60 months incarceration, consecutive to the first sentence, on the firearm count. In imposing sentence, the district court found that all of the cocaine discovered in the house was part of Ricks's relevant conduct for sentencing purposes. The district court also added a two-level enhancement for obstruction of justice. Ricks timely appealed the judgment and the denial of the motions to suppress.
 
 II.
 
 16
 Ricks raises five issues on appeal. We address these issues in turn.
 
 A.
 1. The Inculpatory Statement
 
 17
 Ricks first argues that the inculpatory statement regarding his having gotten back in the drug business should have been suppressed. He maintains that this statement was made in response to custodial interrogation.[6] Because the Miranda warnings given to Ricks prior to interrogation did not include a warning that Ricks could stop answering questions at any time,[7] Ricks alleges that the warnings were defective, and the statement must be suppressed. However, this argument fails.
 
 
 18
 Under Miranda, a suspect who is in custody may not be interrogated unless he first has been advised of certain rights:
 
 
 19
 Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.
 
 
 20
 Miranda, 384 U.S. at 444. Ricks contends that these rights include the right to stop answering questions at any time. However, we have previously rejected the argument Ricks now makes. See United States v. Davis, 459 F.2d 167, 168-69 (6th Cir.1972). See also United States v. Larez-Valdez, 939 F.2d 688, 689-90 (9th Cir.1991) ("[A] defendant need not be informed of a right to stop questioning after it has begun."); United States v. DiGiacomo, 579 F.2d 1211, 1214 (10th Cir.1978) (this warning is not required by Miranda, although it may be relevant in determining whether answers are voluntarily given). We find that Miranda was fully complied with here, and therefore, suppression of the statement was not required.
 
 
 21
 2. The Firearms, Beeper, and Personal Papers
 
 
 22
 The district court also did not err by denying the motion to suppress the firearms, the beeper, and the personal papers found on the dresser. Ricks apparently maintains that because the type of firearms involved here, the beeper, and the personal papers are not necessarily linked to drug trafficking, the officers slacked probable cause to seize these objects.
 
 
 23
 The warrant permitted a search for "legend and/or narcotic drugs including cocaine."[8] While the firearms, beeper, and papers are not encompassed by the warrant, these items come within the "plain view" doctrine. If an officer is justified in making the initial intrusion into a particular area, the "plain view" doctrine permits seizure of any other items of incriminating nature. Horton v. California, 496 U.S. 128 (1990) (where warrant authorized search for robbery proceeds, officer was permitted under the "plain view" doctrine to seize other items discovered during search, including a key used in the crime). "When the police are validly on the premises, the plain view doctrine allows them to seize ... that evidence whose incriminating character is 'immediately apparent.' " United States v. Patrick, 959 F.2d 991, 997 (D.C.Cir.1992) (quoting Horton, 496 U.S. 128, 110 S.Ct. 2301, 2308 (1990)). See also United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir.), cert. denied, 112 S.Ct. 267 (1991).
 
 
 24
 Finding firearms in proximity to cocaine provides probable cause to seize the firearms. See Hughes, 940 F.2d at 1127. Beepers are recognized tools of the drug trade. See United States v. Ferguson, 935 F.2d 1518, 1529 (7th Cir.1991); United States v. Solis, 923 F.2d 548, 550 (7th Cir.1991); United States v. Guerra, 888 F.2d 247, 251 (1989), cert. denied, 494 U.S. 1090 (1990). Thus, they also may be seized once drugs have been discovered. Finally, Ricks's identification and the letters on the dresser were properly seized. The discovery of Ricks's personal belongings in his mother's room of his mother's house was incriminating evidence that he may have exercised control over the weapons found in her room.
 
 B. 404(b) Evidence
 
 25
 Ricks also challenges the admissibility of testimony concerning his prior arrest, on December 12, 1990. He maintains, first, that because the charge for this offense was dismissed, cross-examination as to this prior arrest was more prejudicial than probative and, therefore, even if admissible under Fed.R.Evid. 404(b), should not have been permitted under Fed.R.Evid. 403. Following a bench conference, the district court had allowed the government to cross-examine Ricks on this incident because the court found that it went to his opportunity to deal drugs and because the testimony was relevant and more probative than unfairly prejudicial.
 
 
 26
 We recently, sitting en banc, clarified the proper standard of review of a district court's Rule 404(b) determination:
 
 
 27
 Although this court has frequently stated that we review 404(b) evidence under an abuse of discretion standard, we believe it is more precise to state the following. First, it must be determined as a matter of preliminary fact whether there is sufficient evidence that the prior act occurred. Second, a legal determination must be made whether the "other act" allegedly committed by the defendant was admissible as evidence of "intent, preparation, [or] plan."
 
 
 28
 United States v. Gessa, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc ). See also Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts ... may ... be admissible [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ..."). Similar-act evidence "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1501 (1988). Ricks does not dispute that the prior act occurred and that he was the actor, and his testimony on direct examination permitted the government to inquire, on cross examination, about the circumstances of the December 1990 arrest. On direct examination, Ricks denied that the cocaine in the freezer and in the closet was his, denied knowing how the cocaine got in those places, and denied having seen before the beeper found in the living room. Then, when asked if he used the firearms in connection with any drug activity, Ricks said, "No, sir. I don't deal with drugs." On cross-examination, Ricks again denied being involved with drugs. After the government asked Ricks if he had made the statement about getting back into drugs, Ricks said, "I don't even deal with dope, so why would I make a comment like that for?" Because of Ricks's testimony, the government was justified in questioning Ricks about the December 1990 incident on cross-examination in order to impeach his testimony by showing that Ricks, at least arguably, did in fact "deal with drugs."[9]
 
 
 29
 More problematic is the testimony of the two officers about the December 1990 incident. The government called these witnesses in rebuttal and each testified as to the facts surrounding Ricks's arrest. Neither officer had seen Ricks with cocaine before his arrest and no cocaine was found on his person, but he was arrested with the others and charged with a drug offense.
 
 
 30
 This evidence is properly analyzed under Fed.R.Evid. 404(b).[10] Rule 404(b) permits the admission of "other crimes, wrongs, or acts," not to prove the character of a person in order to show action in conformity therewith, but for various other purposes. The government argues that the testimony regarding Ricks's prior arrest was admissible on three grounds: to show opportunity (in that Ricks had access to drugs), to prove intent and knowledge (in that Ricks chose to associate with people who were involved in drugs), and to show absence of accident or mistake (i.e., to refute Hood's testimony that Ricks was set-up). The district court admitted the testimony to show opportunity.
 
 
 31
 We reject each of these justifications. First, evidence used to establish opportunity is evidence which shows access to the scene of the crime, the defendant's possession of a special skill or position which would make it easier for him to commit the crime, or a particular identifying link to the crime (e.g., possession of a .38 caliber gun days after a robbery in which a .38 was used). Ricks's presence with drug dealers (seven months earlier) does not show his opportunity to possess drugs, any more than living in a neighborhood where frequent drug arrests are made shows opportunity to deal in drugs. Whatever tangential connection can be made between Ricks's acquaintances and his opportunity to possess cocaine does not come within the scope of 404(b).
 
 
 32
 Second, neither does Ricks's friendship with drug dealers show he intended to possess cocaine seven months later. See, e.g., United States v. Foskey, 636 F.2d 517 (D.C.Cir.1980) (evidence that two years prior, defendant was arrested for possession of same type of drugs, inadmissible under either Rule 404(b) or 403). Ricks's case is to be distinguished from a case in which there is more substantial evidence of prior drug transactions. See, e.g., United States v. Elkins, 732 F.2d 1280 (6th Cir.1984) (prior cocaine transactions seen by informant admissible to prove intent in cocaine prosecution).
 
 
 33
 Finally, even though evidence offered to rebut a contention of innocent state of mind is admissible under 404(b), see, e.g., Huddleston v. United States, 485 U.S. 681 (1988) (defendant's other sales of stolen property obtained from same suspicious source admissible to prove his knowledge that goods in question were stolen), Ricks's prior arrest was not admissible to prove absence of mistake or accident, because mistake or accident was not an issue in this case.[11] Ricks asserted that the cocaine was not his and that he did not know it was in his house; he did not argue that he accidentally brought the cocaine home or thought the cocaine was some innocent substance. Although the government argues the prior arrest tends to show the absence of a "set-up" by Hood, we fail to see the connection. Ricks's prior arrest does not have any tendency to show that someone else did not frame him in this instance.
 
 
 34
 In short, we find no acceptable reason for admitting the officers' testimony. We are left with the conclusion that the evidence of Ricks's association with drug dealers is simply evidence of his character and this is precisely the reason to exclude it. It is fundamental to our system of justice that "a defendant must be tried for what he did, not for who he is." United States v. Myers, 550 F.2d 1036, 1044 (5th Cir.1977), cert. denied, 439 U.S. 847 (1978).
 
 
 35
 This does not, however, mean that Ricks's conviction must necessarily be reversed. We are next required to consider whether the admission was merely harmless error. In light of the evidence, we do not think that admission of the prior arrest affected the outcome. The evidence against Ricks was substantial. The CI called Ricks and Ricks said, "Come on [over], I can take care of you." The officers found cocaine in Ricks's freezer under some meat and in his closet by his boots. When confronted with the cocaine found in his freezer, Ricks admitted that he had sort of gotten back into drugs. Hood's testimony was incredible and raised no reasonable doubt as to Ricks's culpability. We therefore hold that although the testimony regarding Ricks's prior arrest was inadmissible, it did not amount to reversible error.
 
 C. Sufficiency of the Evidence
 1. Drug Charge
 
 36
 A challenge to the sufficiency of the evidence will be upheld if, construing the evidence most strongly in the government's favor, any rational juror could conclude, beyond a reasonable doubt, that all essential elements of the offense were proven. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. White, 932 F.2d 588, 589 (6th Cir.1991). Witness credibility is solely within the province of the jury. United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988).
 
 
 37
 The government must prove two elements to establish a violation of 21 U.S.C. § 841: (1) knowing possession of a controlled substance; and (2) intent to distribute. United States v. Moralez, 964 F.2d 677, 679 (7th Cir.), cert. denied, 113 S.Ct. 293 (1992); United States v. Munoz, 957 F.2d 171, 174 (5th Cir.), cert. denied, 113 S.Ct. 332 (1992); United States v. Hernandez, 896 F.2d 513, 520 (11th Cir.), cert. denied, 111 S.Ct. 159 (1990). Possession may be actual or constructive. To prove constructive possession, "the evidence must indicate 'ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed.' " White, 932 F.2d at 589 (quoting United States v. Gordon, 700 F.2d 215, 217 (5th Cir.1983) (citations omitted)). Circumstantial evidence, even if not conclusive, may be sufficient to convict. White, 932 F.2d at 590.
 
 
 38
 A reasonable juror could have disbelieved Keith Hood's testimony that he, and not Ricks, placed the cocaine in the refrigerator. Moreover, Ricks offers no explanation for the presence of the cocaine in the closet. The presence of cocaine in the kitchen and a bedroom of the house in which Ricks lived could lead a rational juror to conclude that Ricks had constructive possession of the cocaine.
 
 
 39
 Finally, intent to distribute can be inferred from the amount of cocaine involved or the presence of firearms or other tools of the drug trade. See White, 932 F.2d at 590; United States v. Franklin, 728 F.2d 994, 998 (8th Cir.1984). Although the 11.6 grams of cocaine involved here is not an extraordinarily large quantity, a rational juror could find that, especially given the presence of three firearms and a beeper, this amount was more consistent with distribution than with personal consumption. See Franklin, 728 F.2d at 999-1000 (and cases cited therein).[12] Therefore, sufficient evidence exists to support the conviction on the drug charge.
 
 2. Firearm Charge
 
 40
 There also is sufficient evidence to support the firearm conviction under 18 U.S.C. § 924(c). The elements of a § 924(c) conviction are (1) using or carrying a firearm; (2) during and in relation to a drug-trafficking crime. Garrett, 903 F.2d at 1111. Mere possession of a firearm is insufficient for conviction under § 924(c). United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990). However, under the law of this Circuit, "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate the drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989); see also Brown, 915 F.2d at 225. The fact that a defendant "place[s] himself so that the weapons [are] within reach ... is enough to support an inference that [he] controlled weapons to be used for protection during drug-related transactions." United States v. Pearce, 912 F.2d 159, 162 (6th Cir.1990), cert. denied, 111 S.Ct. 978 (1991).[13]
 
 
 41
 Three guns, one of them concededly owned by Ricks, were present in the house in which he lived. A reasonable juror could conclude that the firearms were there for the purpose of protecting the drugs, especially given that one of the guns, which was at least partially operable, was found a foot away from a package of crack cocaine. A reasonable juror also could find that these firearms were under Ricks's control and readily accessible. Thus, there was sufficient evidence to support the § 924(c) conviction for using or carrying a firearm during and in relation to a drug-trafficking crime.
 
 D. Expert Testimony
 
 42
 Ricks next argues that the expert modus operandi testimony by Officer Batts concerning the use of firearms by drug traffickers is irrelevant and prejudicial because it allows the jury to consider crimes committed by others when those crimes may or may not be similar. However, if accepted, this argument would lead to the result that modus operandi expert testimony would never be admissible, because such testimony necessarily involves drawing a parallel between a particular defendant's crime and crimes committed by others. Such a result is untenable.
 
 
 43
 Moreover, as Ricks acknowledges, we have held that the admission of such expert testimony will be upheld unless manifestly erroneous. See Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1218 (6th Cir.), cert. denied, 484 U.S. 820 (1987). We have expressly found lawful the use of modus operandi testimony by a law enforcement officer. See Pearce, 912 F.2d at 163 (upholding expert testimony by a law-enforcement officer concerning drug dealing and concluding that "[t]he law enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish [the] 'modus operandi' of particular crimes"). The district court's decision to allow this testimony by a properly qualified expert is not manifestly erroneous and will be upheld.
 
 E. Sentencing
 
 44
 Ricks's final argument is that based on Keith Hood's testimony, the district court should have considered as relevant conduct only the approximately 3.8 grams of cocaine found in the closet.[14] Instead, the district court determined that all the cocaine was part of Ricks's relevant conduct and sentenced Ricks accordingly. We review factual determinations concerning relevant conduct only for clear error. United States v. Robison, 904 F.2d 365, 370 (6th Cir.), cert. denied, 111 S.Ct. 360 (1990). The district court refused to credit testimony by Ricks indicating that Ricks was not responsible for the cocaine in the freezer.[15] We will not disturb this credibility determination. The district court's inclusion of all of the cocaine for sentencing purposes is not clearly erroneous and, therefore, will be upheld.
 
 III.
 
 45
 All of Ricks's arguments lack merit. The district court judgment is AFFIRMED.
 
 
 
 [1]
 The house was apparently owned by Ricks's mother. Ricks testified that he lived off and on with his mother and father. Because Ricks's father lived a few miles away and the front bedroom of the house in which Ricks was staying was his mother's room, we assume the house was his mother's
 
 
 [2]
 At trial, Detective Bowman testified that Ricks had been given the following warnings:
 I told him that he had the right to remain silent; that anything he said or did could be held against him in a court of law; that he had a right to an attorney; if he could not afford an attorney, one would be appointed for him before and/or during questioning; and he had a right to stop answering questions at any time if he didn't choose to answer questions, and I asked him if he understood his rights.
 In his testimony at the suppression hearing, Detective Bowman made no mention of having advised Ricks that he had the right to stop answering questions at any time.
 
 
 [3]
 At oral argument, government counsel indicated that he did not know why the charge against Ricks was dropped
 
 
 [4]
 For example, in an earlier statement to Ricks's attorney, Hood had stated that the unidentified man weighed approximately 250 pounds. At trial, however, Hood testified that he weighed approximately 180 pounds. In addition, Hood testified that a month or two after Ricks's arrest, he told Ricks he had planted the drugs in Ricks's refrigerator. However, Hood acknowledged that he never went to the authorities with this information
 
 
 [5]
 There also were certain inconsistencies in Thompson's testimony. For example, whereas Hood testified that he did not get into the Audi, Thompson testified that he saw Hood get into the back of the car. Additionally, whereas Hood testified that the car was parked by the side of the store, Thompson testified that the car was parked down the street from the store
 
 
 [6]
 There is no question that Ricks was in custody at the time he made the inculpatory statement
 
 
 [7]
 There is some question whether Ricks was warned he could stop answering questions at any time. See supra note 4. The district court found that Ricks had been "read his constitutional rights." For present purposes, we assume Ricks was not warned he could stop answering questions
 
 
 [8]
 Ricks does not contest the validity or scope of the search warrant
 
 
 [9]
 Ricks argues that his statements indicate, not that he never dealt in drugs in the past, but that he presently did not deal in drugs. We believe, however, that the statement fairly may have been understood by the jury to indicate that Ricks disavowed any involvement, past or present, in drugs
 
 
 [10]
 The rebuttal testimony of the officers cannot be justified under Fed.R.Evid. 609 [Impeachment by Evidence of Conviction of Crime] because no conviction resulted from Ricks's arrest
 
 
 [11]
 We note that a conflict in the circuits exists on this issue. Compare United States v. Manafzadeh, 592 F.2d 81, 87 (2d Cir.1979) (where defendant contended he was not involved in the crime at all and offered to stipulate to the intent element if the jury found he was involved in the crime, evidence of prior similar conduct was not admissible to show intent because intent was not in dispute) with United States v. Chaimson, 760 F.2d 798 (7th Cir.1985) (even though defendant asserted that he lacked knowledge of bribery scheme, evidence of prior bribe payments admissible to prove intent because defendant's particular defense does not eliminate requirement that government prove intent element)
 
 
 [12]
 See also United States v. Garrett, 903 F.2d 1105, 1113 (7th Cir.), cert. denied, 111 S.Ct. 272 (1990) (possession of 19 grams of substance containing 3.5 grams of cocaine, together with packaging suggestive of distribution and presence of loaded pistol, sufficient to support intent to distribute); United States v. Robinson, 870 F.2d 612, 613 (11th Cir.1989) (25.2 grams of cocaine base legally sufficient to support intent to distribute); United States v. Dunn, 846 F.2d 761, 764 (D.C.Cir.1988); United States v. Matra, 841 F.2d 837, 841 (8th Cir.1988); United States v. LaGuardia, 774 F.2d 317, 320 (8th Cir.1985)
 
 
 [13]
 A firearm need not be loaded or operable for § 924(c) to be implicated. See, e.g., United States v. Moore, 919 F.2d 1471, 1475-76 (10th Cir.), cert. denied, 111 S.Ct. 2812 (1991)
 
 
 [14]
 There was testimony that the package of cocaine in the refrigerator was approximately twice the size of the package in the closet. This would indicate that the package in the closet contained approximately 3.8 grams of cocaine
 
 
 [15]
 The district court also concluded that Keith Hood "perhaps" gave false testimony