12 F.3d 215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie HEARNS, Defendant-Appellant.
 No. 92-6605.
 United States Court of Appeals, Sixth Circuit.
 Nov. 18, 1993.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and WILHOIT, District Judge.[1]
 PER CURIAM:
 
 
 1
 In this appeal, Appellant Eddie Hearns challenges the sufficiency of the evidence presented to the jury regarding the essential elements of possession and intent to distribute crack cocaine from which a verdict of guilty can be sustained. Upon review of the record and argument of the parties, we conclude there was sufficient evidence introduced upon which a reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We AFFIRM.
 
 I.
 Background
 
 2
 On September 22, 1991, Officer Shawn G. Dauberger, and his partner, Officer Tommy Mote, were on routine patrol in their squad car in the west precinct of Memphis, Tennessee. At approximately 1:17 a.m., the officers observed Hearns, another male and a juvenile standing on a street corner in the vicinity of Danny Thomas and Georgia Avenue. As the officers approached the three individuals, Hearns noticed the squad car, turned away from the officers, and as both officers testified, threw what appeared to be a wadded up brown paper bag onto the sidewalk and tucked something into his pants. He then proceeded up the sidewalk away from the police.
 
 
 3
 Officer Dauberger stopped the car, and as both officers exited, Officer Mote asked Hearns to stop. Thereafter, both officers testified that Hearns made a motion towards an object tucked in the waistband of his pants. The officers grabbed appellant and escorted him to the squad car where he was hand-cuffed. Officer Mote then performed a search of his person, and retired a Model 36 Smith & Wesson revolver loaded with four live rounds; nothing else of consequence was found.
 
 
 4
 Meanwhile, Officer Dauberger searched the area where Hearns had previously thrown what had appeared to be a wadded up brown paper bag. Within minutes, he located the discarded brown paper bag under a city issued trash container and found in the bag a substance later confirmed as crack cocaine.
 
 
 5
 The other two individuals on the street corner were stopped and questioned. However, there being no reason to hold them, the man and juvenile were released by the officers.
 
 
 6
 On October 2, 1991, a federal grand jury for the Western District of Tennessee sitting in Memphis, returned a two count indictment against Hearns. Count One charged him with unlawfully, knowingly and intentionally possessing with the intent to distribute approximately 11 grams of cocaine base in violation of 21 U.S.C. Sec. 841(a)(1). Count two charged appellant with carrying and using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c). This matter came to trial on June 4, 1992, and the jury returned a verdict of guilty on both counts.
 
 
 7
 The Officers testified to the events described above. Hearns took the stand on his own behalf and gave a different account of the events in question. He testified that on the night of his arrest he was holding a bottle of whiskey in one hand and a glass in the other. In appellant's version, when he saw the squad car, he placed the glass on a window sill of nearby building and threw the bottle of whiskey onto the sidewalk. Hearns claimed that he informed both officers of this the night of his arrest. This allegation was denied by the officers. He admitted to possessing the revolver, but maintained that this was merely for protection based upon threats he had recently received.
 
 
 8
 Hearns now challenges the sufficiency of the evidence presented to the jury on the essential elements of possession and intent to distribute.
 
 II.
 Standard of Review
 
 9
 When determining whether a conviction is supported by sufficient evidence, we must, after viewing the evidence in the light most favorable to the prosecution, ascertain if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989), citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Direct and circumstantial evidence are accorded the same amount of weight. United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1886) citing Jackson v. Virginia, supra. Furthermore, we recognize that it is permissible for the jury to draw inferences from circumstantial evidence, and such evidence need not be consistent only with an hypothesis of guilt. However, the totality of the evidence must be substantial enough to support a finding of guilt beyond a reasonable doubt. United States v. Pelfrey, 822 F.2d 628 (6th Cir.1987).
 
 Discussion
 
 10
 A. Element of Possession. It is well established that possession can be actual or constructive. United States v. Head, 927 F.2d 1361, 1373 (6th Cir.1991) cert. denied, --- U.S. ----, 112 S.Ct. 114 (1991). We view this case as involving constructive possession. In order to find Hearns guilty, the jury had to find that he knowingly possessed "the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Reeves, 794 F.2d 1101, 1105 (6th Cir.1986), cert. denied 479 U.S. 963 (1986), citing United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.1973), cert. denied, 414 U.S. 866 (1973).
 
 
 11
 Appellant claimed that evidence of mere presence near the narcotics alone is deficient to support an inference of possession. In United States v. White, 932 F.2d, 589 (6th Cir.1991), this court agreed with this proposition. However, in the instant case, not only was Hearns present on the premises where the crack cocaine was recovered, but also, we have two eyewitness accounts given by Officer Dauberger and Officer Mote that they had observed him throw down what appeared to be a wadded up brown paper bag about the size of a baseball. According to the testimony of Officer Dauberger, the two policeman were only twenty to twenty-five feet away when this occurred. The bag was recovered within minutes after the search was initiated by Officer Dauberger. He testified that it took two minutes because it had rolled under a city trash bin located some eight feet from the street. Officer Mote corroborates this account in his testimony that Officer Dauberger showed him the bag within two and one half minutes after apprehending Hearns and concluded that the light in the area had been sufficient to permit the officers to see accurately what Hearns threw down as they approached.
 
 
 12
 Moreover, while mere presence near the substance or contraband is insufficient to show the requisite control, presence combined with other incriminating evidence can "tip the scale in favor of sufficiency." United States v. Poulous, 895 F.2d 1113, 1119 (6th Cir.1990). The jury heard evidence that it was 1:17 a.m. when the police officers witnessed this incident. There was a street light on a nearby corner and it was functioning at least minimally, if not optimally. Officer Dauberger testified that he did not employ a flashlight while Officer Mote recalls Officer Dauberger using his flashlight. Nevertheless, the reviewing court is instructed to resolve all conflicts in testimony in the government's favor. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983), citing United States v. Wolfenbarger, 426 F.2d 992 (6th Cir.1970). Obviously, the jury heard the discrepancy and decided to disregard it.
 
 
 13
 The same rationale is applicable to the conflicting testimony regarding the premises where the paper bag was found. Appellant contends that what he threw to the ground was not the wadded up paper bag that Officer Dauberger retrieved from under the trash bin and tries to hang his hat on the inconsistency in testimony regarding the condition of the sidewalk where the paper bag was found. While Officer Dauberger does not remember litter around the area, Officer Mote recalled several pieces of trash and empty bottles on the sidewalk. Again, it was for the jury to determine which testimony was the most accurate.
 
 
 14
 Furthermore, both officers testified that this was a "high drug crime" area. Officer Dauberger had been employed by the Memphis Police Department for two and one half years and had been involved in over 100 arrests involving controlled substances. Officer Mote, while only working in the west precinct for five and one half to six months, still testified to the notoriety of the area.
 
 
 15
 Finally, the most incriminating piece of evidence not yet mentioned is the revolver found on appellant containing four live rounds. Drug dealers often possess guns in order to facilitate their unlawful activity. We believe the possession of the gun by Hearns, his attempt to leave the scene as quickly as possible, and the officers' observation of him discarding the wadded up paper bag subsequently found to contain crack cocaine all combine to create sufficient evidence from which a reasonable jury could infer he possessed the crack cocaine. While this may be circumstantial evidence, a rational juror could find that the bag was in the appellant's constructive possession.
 
 
 16
 B. Element of Intent to Distribute. The court in United States v. Faymore, 736 F.2d 328, 333 (6th Cir.1984) cert. denied, 469 U.S. 868 (1984), held that absent evidence of actual delivery, the intent to distribute can still be inferred from circumstantial evidence of possession of large quantities of controlled substances. We have continued to follow this holding and allow such and inference today. See United States v. White, 932 F.2d 588 (6th Cir.1991); United States v. Dotson, 871 F.2d 1318, 1323 (6th Cir.1989), cert. denied, 498 U.S. 831 (1990).
 
 
 17
 The appellant's primary contention is that 8.7 grams of crack cocaine is not sufficiently large enough to support this inference, and alternatively, that the Government failed to offer expert testimony pertaining to the amount needed to constitute a "large quantity". He cited two cases, United States v. Franklin, 728 F.2d 994 (8th Cir.1984) and United States v. Boissoneault, 926 F.2d 230 (2d Cir.1991), where the courts held that quantities larger than the 8.7 grams recovered in this case were insufficient alone to sustain an inference of an intent to distribute.
 
 
 18
 Paramountly, we note that Officer Dauberger testified that a single use of crack cocaine would weigh approximately one tenth of a gram. Hearns objected to this testimony at trial, but the trial judge allowed the testimony based upon the officer's experience in the area of drug trafficking arrests. Again, he had been an officer with the Memphis police for two and one half years and had been involved in over 100 arrests for drug crimes. The jury was given evidence that the amount of crack cocaine recovered, 8.7 grams, was far in excess of what one person would carry for personal use. According to Officer Dauberger, crack cocaine users generally carry just enough to smoke at one sitting. The amount of crack cocaine recovered from Hearns equaled some eighty seven personal use "hits." We believe that contrary to appellant counsel's assertion that "when you buy bread, you buy a loaf, not a slice", 87 hits constitutes more than buying just a few slices. Officer Dauberger testified that the street value of one tenth of a gram was approximately ten to twenty dollars. Based upon this data, the crack cocaine recovered from this arrest would bring between eight hundred seventy ($870.00) and one thousand seven hundred forty ($1.740.00) dollars.
 
 
 19
 Additionally, Officer Mote testified that there was no evidence found during the search of the Appellant's person or the immediate area that indicated he was a user of crack cocaine. Officer Dauberger, in his testimony, stated that a distinction between the user of crack cocaine and a distributor is the paraphernalia usually found on the user. No crack pipe or straight shooter, brillo pads, or small tweezers were found during Officer Mote's search of Hearns.
 
 
 20
 Appellant asserts that Ms. Freida Saharovici, the research toxicologist at the University of Tennessee at Memphis, who analyzed the crack cocaine found in the paper bag, should have tested the substance to determine its percentage of pure form cocaine. Her report read, the "rock like material is or contains cocaine in its free base form in both samples." She continued to explain that free base form is commonly known as crack cocaine.
 
 
 21
 Assuming arguendo that Ms. Saharovici's testimony does not provide enough information and that Officer Dauberger's opinion on crack cocaine use is not qualified expert testimony strong enough to establish an intent to distribute, Hearns shoots himself in the foot with the two cases upon which he relies; the holdings actually support the Government's position. In United States v. Franklin, 728 F.2d 994 (8th Cir.1984), the Eighth Circuit held that possession of thirty five grams of cocaine powder with no other evidence is not sufficient to infer an intent to distribute. However, the court qualifies this holding by stating "[C]ourts have sustained the inference of intent to distribute in cases involving quantities of drugs comparable to the amount found in Franklin's possession at the time of his arrest. However, in each case the government's proof included additional circumstances or evidence consistent with the intent to distribute narcotics." Franklin, 728 F.2d at 999. One of the indicia of narcotics distribution explicitly stated in the court's holding is the carrying of a weapon.
 
 
 22
 The same is true of the Second Circuit in United States v. Boissoneault, 926 F.2d 230 (2d Cir.1991). The court refused to uphold the inference of an intent to distribute because there was no evidence that the defendant owned a gun or any other weapon. In each of the cases, other indications of narcotics distribution are mentioned that combined with the quantity can sustain such an inference of intent to distribute. The most relevant to the instant case is the carrying of a weapon. Appellant admits that he had in his possession a .38 caliber Smith and Wesson revolver loaded with four live rounds. Recently, in United States v. Ricks, No. 92-5503, 1993 WL 78781, at * 7 (6th Cir. March 19, 1993) (per curiam), we stated that "intent to distribute can be inferred from the amount of cocaine involved or the presence of firearms or other tools of drug trade." While 8.7 grams is not an phenomenally large quantity of crack cocaine, this amount combined with the presence of a loaded pistol, is sufficient evidence to support an inference of an intent to distribute rather than personal consumption.
 
 
 23
 In summary, a verdict rendered by a properly instructed jury should be given great deference on appeal. While it is true that it would have been a much stronger case against Hearns if the officers had found the crack cocaine on his person and had procured a confession from him of his intent to distribute. Nonetheless, there was valid circumstantial evidence presented, and a rational juror could have found Hearns guilty of a violation of 18 U.S.C. Sec. 841(a)(1). Therefore, the standard adopted by the Sixth Circuit in Ellzey has been met. See Ellzey, 874 F.2d at 328. Accordingly, the conviction is AFFIRMED.
 
 
 
 [1]
 Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation