**UNITED STATES of America**

v.

**Curtis Leroy OWENS.**

**Crim. No. SA71CR341.**

United States District Court,
W. D. Texas,
San Antonio Division.

June 21, 1972.

William S. Sessions, U. S. Atty., Joel Conant, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Fred A. Semaan, San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

SPEARS, Chief Judge.

The defendant was indicted for knowingly and intentionally possessing with intent to distribute approximately 27 grams of heroin, a controlled substance, in violation of Title 21, U.S.C. Section 841(a) (1). He subsequently entered a plea of not guilty to that charge, and urged a motion to suppress certain packets of heroin removed from his person, on the ground that they were acquired through an unreasonable search and seizure. The motion to suppress was overruled, and the defendant having waived a jury, trial was had before this Court on May 24, 1972.

The evidence reflects that on or about October 3, 1971, agents of the anti-piracy detail at the San Antonio International Airport first became suspicious of the defendant when they entered an airport restroom and saw him flee to a toilet area. Further observation led agents to believe that defendant was not using the toilet facilities in a normal manner, although he was present therein for some ten minutes. During this period, the agents heard a clinking that sounded like porcelain hitting glass. After defendant had left the toilet at an unsteady gait, a search of the stall revealed a stack of burned paper and matches.

Their suspicions properly aroused by defendant's actions, the agents placed him under further surveillance. In going to a snack bar, defendant's walk was very quick, and his overall manner made him appear to be extremely nervous. While closely observing people around him, he spotted the trailing agents, whereupon he immediately left the snack bar area, his hands shaking noticeably, his walk still very fast and always in the opposite direction from the agents who were trying to follow him. Finally, the agents caught up with defendant, properly identified themselves, and asked him to accompany them to the office of the Airport Customs Station, which he voluntarily did.

Upon reaching the office, the agents noticed defendant's hand close to a bulge in his pocket and asked him to remove his hand. At that point, defendant removed his hand and swept it to his mouth, placing what appeared to be a cellophane

package in his mouth. At the same time, he pushed agents out of his path and fled toward the airport exit. In the corridor, however, he was stopped by the agents, arrested and hand-cuffed. At that time, agents removed part of the packages from defendant's mouth and moved him back to the customs office. Upon arrival, agents had a clear indication that other parts of the packages remained in defendant's stomach, and ordered him to a local hospital to have his stomach pumped. The packages removed from defendant's mouth, was well as the material removed by the stomach pumping, contained a total of 26 grams of heroin hydrochloride, the contraband upon which the indictment was based.

The above undisputed facts were developed at the preliminary hearing, a transcript of which was offered and accepted into evidence at the trial before the Court, with the agreement of the parties. At the trial on the merits, the Government called only one additional witness to the stand, agent Harris, who testified that immediately after defendant's arrest he noticed collapsed veins and track marks in defendant's arms, and that it appeared to him that defendant was a narcotic addict. The Government then rested, after which the defendant took the stand and testified that he was in fact an addict at the time of his arrest; that he used approximately one and one-half grams of heroin per day; and that the 26 grams of heroin in his possession was for his personal use only. The Government made no attempt to refute defendant's testimony in this respect. On the other hand, as indicated,

the agent corroborated the defendant's testimony that he was an addict.

The evidence is uncontradicted that the defendant knowingly and intentionally had in his possession approximately 26 grams of heroin, in violation of Title 21 U.S.C. Section 844(a). The only issue is whether or not he possessed the heroin with the intent to distribute it. In attempting to prove the intent element, the Government offers no direct evidence; they merely contend that the amount of heroin in defendant's possession is *ipso facto* a commercial quantity. Also, the Government argues that the mere possession of narcotics is presumed to be for distribution purposes, and that the burden of negating this presumption rests with the defendant.

The Court concedes that in some cases the mere quantity of narcotics may be sufficient to justify the *inference* that they are not possessed solely for personal use.[1] However, the evidence here reflects, without dispute, that the defendant was a narcotic addict, and that he was using a gram and one-half of heroin per day at the time the alleged offense was committed. For an addict using that much heroin, it cannot be said beyond a reasonable doubt that the amount found in his possession was, standing alone, sufficient to justify the conclusion that it was not intended for his personal consumption. Certainly, some additional evidence showing "intent to distribute" is necessary in a situation of this kind to support a conviction under Section 841 (a) (1), but there was no showing of any other surrounding circumstances relevant to that element of the offense.[2]

1. See United States v. Cerrito (1969), 413 F.2d 1270, C.A.7th Cir., 1969, cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970).

2. For the purpose of illustration only, it possibly may be shown by competent evidence in a case of this kind that the amount of contraband possessed by a defendant was a commercial quantity; or that its consumption by him within any reasonable period was unlikely; or that there had been prior negotiations

by him to sell or deliver the contraband; or that there had been an actual sale or delivery of the contraband by him. Similarly, the defendant's personal wealth or source of income; the strength of the drug, or its value either at the place where the alleged offense was committed, or at the defendant's ultimate destination; or the size and type of packaging being utilized, among other things, might be pertinent in determining the issue of intent to distribute.

The Government has submitted no authority in support of its position that the possession of narcotics creates a presumption of intent to distribute. Instead, they rely upon *Cerrito, supra,* note 1, and its inference that the drugs possessed by the defendant in that case were neither for his personal use, nor for administering to his dog. That case, however, involved the possession of over one million amphetamine tablets, from which such an inference can clearly be drawn, as opposed to this situation where the defendant, an addict, had a 17 day supply of heroin in his possession. Unlike *Cerrito*, the circumstantial evidence in this case renders the probability of defendant's innocence as consistent as his guilt, and the evidence does not exclude every other reasonable hypothesis except his guilt.

Each case must stand or fall on its own facts, and inferences can be created only if there are sufficiently strong circumstances present. In the instant case, there is a reasonable doubt in the Court's mind as to whether or not the defendant possessed the heroin in question with the intent to distribute the same, in violation of Section 841(a) (1). However, except for the element of "intent to distribute," Section 844(a) has the identical elements (knowingly and intentionally possessing a controlled substance) of the offense charged under Section 841(a) (1), and the penalty for a violation of said Section 844(a) is considerably less than that provided for a violation of Section 841(a) (1); therefore, a violation of Section 844(a) is necessarily included in the offense charged in Section 841(a) (1), thus making the application of Fed.R.Cr.P. 31(c) appropriate.[3]

This Court finds that the defendant did knowingly and intentionally possess a controlled substance, to wit, 26 grams of heroin, on the occasion in question, but since there is a reasonable doubt in the Court's mind as to whether such possession was with the intent to distribute the same, the defendant is hereby ad-

judged to be "not guilty" of a violation of Title 21 U.S.C. Section 841(a) (1), but "guilty" of a violation of Title 21 U.S.C. Section 844(a).

---

3. Rule 31(c) says, "The defendant may be found guilty of an offense necessarily included in the offense charged. . . ."