**UNITED STATES of America**

v.

**Arthur MOSES and Claudell Gilles.**

**Crim. No. 72-279.**

United States District Court,
W. D. Pennsylvania

May 18, 1973.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Wendell G. Freeland, Pittsburgh, Pa., for defendants.

## OPINION

SCALERA, District Judge.

Defendants, Arthur Moses and Claudell Gillis, were tried before this court without a jury on a one-court indictment charging that on or about July 15, 1972 in Pittsburgh in the Western District of Pennsylvania, they knowingly and intentionally possessed, with intent to distribute, approximately 22.5 grams of heroin, a narcotic drug and Schedule I controlled substance, in violation of Title 21 U.S.C. § 841(a)(1).

This court having duly considered the evidence submitted by stipulation and by testimony, the trial briefs and oral arguments of counsel now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. William Jacobs, Arthur Moses and Claudell Gillis were seen together at a bar near Talbot Towers in Braddock, Pennsylvania, at approximately Midnight on July 15, 1972.

2. At approximately 5:25 a. m. on July 15, 1972, agents from the Bureau of Narcotics and Dangerous Drugs (BNDD) stopped a 1971 Mercury Couger at the intersection of 4th and South Braddock Avenues in the Borough of Braddock in the Western District of Pennsylvania.

3. The occupants of the vehicle were Arthur Moses, the driver, Claudell Gillis, seated in the right-front seat, and Bernard Smith, seated in the back seat.

4. The vehicle belonged to Floyd Jacobs, who frequently permitted his brother William Jacobs to use the car.

5. The agents identified themselves, placed the occupants under arrest, and advised them of their rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After being preliminarily searched at the scene of the arrest, the occupants were taken to the Braddock Police Station where they were again searched.

6. The agents found on Arthur Moses a loaded 32-caliber automatic weapon in a shoulder holster, 50 glassine packets containing 21.62 grams of heroin of 2.2% purity in a brown paper bag in his jacket pocket, and a glassine packet containing .49 grams of heroin behind a belt in the front of his pants.

7. The street value of the 50 glassine packets found on Moses is approximately $1,250, each packet having an estimated street price of $25.

8. Agents found on Gillis a loaded 32-caliber automatic weapon in a shoulder holder under his jacket and a glassine packet containing .39 grams of heroin in a Kool cigarette package.

9. Nothing was found on Smith.

10. The glassine packet in the Kool package was similar to the glassine packets found on the person of Moses. All were glassine envelopes of the type regularly used by stamp collectors. They were the same size and sealed by the same type of plastic tape.

11. This type of packaging in which the heroin was found is commonly used in the illegal street distribution of narcotics.

12. A chemical analysis of the contents of the packets revealed that all contained heroin and quinine, methapyrelene, and sugar, adultrants of cutting agents of heroin.

13. A BNDD special agent who had been in law enforcement dealing with drugs approximately six years, and who had read approximately 1,000 BNDD chemical reports in his capacity as a supervisor, stated that he had never before seen methapyrelene used as a cutting agent with heroin; that in fact he had never heard of methapyrelene.

14. Moses and Gillis stated to a BNDD agent that they did not use heroin or any other narcotic.

15. When one of the agents commented at the time of the arrest that it was stupid for them to be armed with loaded weapons, Gillis asked him if he knew about the black militant vigilantes, stating that they were "ripping off" a lot of dudes when they were "doing their thing." In response to the agent's comment that they were taking a chance with loaded weapons, Gillis said, "Yeah, well, that's how it goes when you're doing your thing."

16. At the time of defendants' arrest, a group of young blacks in Pittsburgh calling themselves the "Vigilantes" was trying to rid certain areas of the city of drugs through violence and assassination. Their target was the drug distributors.

17. In the normal street jargon of narcotic dealers, a "rip off" refers to someone being robbed of narcotics or money, and "doing your own thing" as used in this context refers to dealing in narcotics.

## DISCUSSION

■ To establish that Arthur Moses and Claudell Gillis violated Title 21 of the United States Code § 841(a)(1), the government must prove beyond a reasonable doubt that defendants were in possession of a controlled substance and that they had the intent to distribute said controlled substance. Heroin is a Schedule I controlled substance within the meaning of the Act. 21 U.S.C. § 812.

*Arthur Moses*

■ There is no doubt that Moses was in possession of a controlled substance. He had 51 glassine packets containing 22.11 grams of heroin on his person at the time of his arrest. The issue raised with regard to the question of his guilt is whether he had the intent to distribute this heroin. There is no specific formula for determining the existence of intent to distribute. Each case must turn on its own facts and the inferences which can be drawn from the facts.

Intent is not susceptible of direct proof; it must be proved by circumstances. The circumstances establishing such intent in a narcotic prosecution may properly consist of the quantity of the product involved, the nature of its packaging, and other relevant facts. United States v. Childs, 463 F.2d 390, 392 (4th Cir. 1972).

■■ In addition to the quantity of heroin found in Moses' possession,[1] the facts show that Moses was not a user of heroin, which indicates that the drug was intended for purposes other than personal consumption, and that the heroin was packaged in the manner commonly utilized in the illegal street distribution of drugs. This evidence, coupled with the time defendant Moses was picked up, the fact that he was armed, and the explanation given for being armed,[2] convinces us beyond a reasonable doubt that Moses intended to distribute the heroin in his possession.

*Claudell Gillis*

One packet containing .39 grams was found on the person of Gillis. It is contended that Gillis was not in possession of the heroin found on the person of Moses and that the possession of one packet of heroin is an insufficient amount to establish possession with the intent to distribute.

---

1. We note that this amount may not be enough in and of itself to establish intent to distribute, *compare* United States v. Owens, 344 F.Supp. 1355 (W.D.Texas 1972) *with* Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969).

2. As we conclude that there is concert of action between Moses and Gillis, Gillis' statement regarding the reason for the guns may be imputed to Moses. United States v. Williams, 435 F.2d 642 (9th Cir. 1970).

■ We do not need to determine whether intent to distribute may be inferred from the possession of a single packet of heroin, because we find that Gillis was in constructive or joint possession of the heroin found on Moses and that he had the intent to distribute this heroin, as well as the single packet found on his person.

More than mere proximity to the heroin or mere association with the person controlling the heroin has been demonstrated here. *See* United States v. Bonham, 477 F.2d 1137 (3d Cir., filed April 2, 1973); United States v. Bethea, 143 U.S.App.D.C. 68, 442 F.2d 790 (1971); Bettis v. United States, 408 F.2d 563 (9th Cir. 1969); Murray v. United States, 403 F.2d 694 (9th Cir. 1968). The evidence convinces us that Moses and Gillis were engaged in a joint venture involving the intended illegal distribution of heroin, in which case Gillis can be considered to "knowingly have the power to exercise dominion and control" over the heroin found on the person of Moses. *See* United States v. Davis, 461 F.2d 1026 (3d Cir. 1972); Riley v. United States, 411 F.2d 1146 (9th Cir. 1969); United States v. Jackson, 423 F.2d 506 (9th Cir. 1970).

Moses and Gillis were picked up driving around in an automobile at 5:25 in the morning. They were armed with loaded weapons. They had been seen together earlier that evening at a bar, which indicates they had spent some time together and this was not a spurious contact. Both stated they did not use heroin and Gillis explained they were armed to protect themselves from a group of young blacks who were directing violence at drug pushers. Heroin was found on both defendants which was packaged identically and which contained a very unusual cutting agent, methapyrelene, which indicates that the heroin came from the same source.

This evidence convinces us that Gillis not only knew about the heroin found on Moses but that he was associated with him in its intended distribution. We find therefore that Gillis was in joint or constructive possession of the heroin found on the person of Moses and that he intended to distribute said heroin.

These facts further convince us that Moses and Gillis jointly possessed the single packet of heroin found on the person of Gillis and that they intended to distribute said heroin.

*Constitutionality of 21 U.S.C. § 841(a)(1)*

■■ Defendants' contention that 21 U.S.C. § 841(a)(1), which provides: ". . . it shall be unlawful for any person knowingly or intentionally . . to possess with intent to manufacture, distribute, or dispense a controlled substance" is void for vagueness is without merit. This statute very clearly identifies the conduct which it intends to proscribe. *See* Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). There is no requirement that the legislature indicate what evidence is required to establish violation of a statute to satisfy the due process requirements of specificity.

## CONCLUSIONS OF LAW

1. Jurisdiction and venue of this action are properly laid in this court.

2. Arthur Moses was in actual possession of 51 packets containing 22.11 grams of heroin and in constructive possession of one packet containing .39 grams of heroin.

3. Moses intended to distribute said heroin.

4. Claudell Gillis was in actual possession of one packet containing .39 grams of heroin and in constructive possession of 51 packets containing 22.11 grams of heroin.

5. Gillis intended to distribute said heroin.

6. The government has established beyond a reasonable doubt each and every element of the offense charged in the indictment.

Arthur Moses and Claudell Gillis are adjudged guilty of the offense charged in the indictment.