## Commonwealth v. Sullivan

C.P. of Lawrence County, nos. 498 of 2002 CR, 742 of 2002 CR, 553 of 2002 CR, 626 of 2002 CR and 628 of 2002 CR.

*Karen White,* for Commonwealth.
*Stephen Delpero,* for defendant Wright.
*Nick A. Turco Jr.,* for defendants Sullivan, Austin and Moss.
*Norman A. Levine,* for defendant King.

MOTTO, *J.,* February 14, 2003—The above captioned defendants each have pending before the court motions challenging the constitutionality of the statute under which they are charged, criminal use of a communications facility (18 Pa.C.S. §7512), and the sufficiency of the evidence relating to each charge. All defendants have agreed to have hearing on their pending motions con-

solidated with a joint non-jury trial, held on stipulation of evidence, with the court to decide the motions and enter verdicts as appropriate.[1]

Those stipulations are as follows:

(1) Telephone conversations were intercepted and recorded by the authorities.

(2) The other speaker in all of these conversations was James Johnson and the said James Johnson was selling illegal substances during the time in question.

(3) Identification of all of the defendants' voices and of all other voices recorded would be established by the Commonwealth's testimony.

(4) The Commonwealth's expert in the field of narcotics would testify in the manner set forth in the written stipulated testimony entered of record as exhibits.

(5) The crime lab report submitted regarding Anthony Moss would have been the only crime lab reports that would have been submitted at trial, and the various police reports submitted would be the substance of the testimony against defendant Moss.

(6) That each submitted packet of stipulated evidence shall be evaluated independent of all other defendants.

(7) That this court will, after examination of facts and law, issue a verdict by order of court.

All of the defendants contest the sufficiency of the stipulated evidence and the constitutionality of the stat-

---

1. The defendant Moss is also charged with delivery of a controlled substance, possession of a controlled substance, and possession of a controlled substance with intent to deliver, all violations of the Controlled Substance, Drug Device and Cosmetic Act.

ute defining the charge of criminal use of a communication facility as a deprivation of due process.

The constitutional argument advanced in that the statute, criminal use of a communications facility, 18 Pa.C.S. §7512, violates due process in that it "is vague and fails to give fair warning as to what acts are prohibited." Robert Sullivan's brief in support of motion for judgment of acquittal, p. 3. Anthony Moss's brief in support of motion for judgment of acquittal, p. 3. Dana Austin's brief in support of motion for judgment of acquittal, p. 3. Subsection (a) (the substantive offense portion of the statute) reads as follows:

"(a) Offense defined.—A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the Act of April 14, 1972 (P.L. 233, no. 64), known as The Controlled Substance, Drug Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section."

In subsection (c) a "communication facility" is defined as a "public or private instrumentality used or useful in the transmission of signs, signals, writings, image, sounds data or intelligence" including but not limited to "telephone, wire, radio, electromagnetic, photo-electronic or photo-optical systems or the mail." Criminal legislation must lay down a reasonably ascertainable and definite standard of guilt. A criminal statute must be definite to be valid, and a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its mean-

ing and differ as to its application is violative of due process. A criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute, or that is so indefinite that it encourages arbitrary and erratic arrests and convictions, is void for vagueness. *Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979). A lack of fair warning in the criminal statute of what conduct is prohibited will offend due process. *United States v. Lanni*, 335 F. Supp. 1060 (E.D. Pa. 1971), *aff'd*, 466 F.2d 1102 (3d Cir. 1972). However, there is no constitutional requirement that the statute proscribing the criminal conduct delineate what evidence is required to establish a violation of the statute in order to satisfy the due process requirement of specificity. *United States v. Moses*, 360 F. Supp. 301 (W.D. Pa. 1973). The constitutionality of 18 Pa.C.S. §7512 has not been passed upon by any reported decision of any court of this Commonwealth that the research of the court and counsel can disclose. However, the Commonwealth has directed the court to a federal statute, which is somewhat similar to the statute in question, which has been challenged on the basis of its constitutionality. The federal statute, 21 U.S.C. §843(b) provides as follows:

"It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this title or title III. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term communication facility means any and all public and private instrumentalities used or useful in the transmission of

writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication."

In *U.S. v. Rogers,* 755 F.2d 533 (7th Cir. 1985), the 7th Circuit Court of Appeals held that the foregoing statute was not unconstitutionally vague.

In *Rogers,* the defendant was found guilty of the aforementioned statute where defendant caused another, his co-conspirator, to place a telephone call to the Bahamas in order to arrange an illegal drug transaction. The defendant attacked the constitutionality of the statute on the basis that it was overly broad and vague. The court denied both of the defendant's constitutional claims, but the court here will discuss the holding in *Rogers* only with respect to the vagueness claim, as the defendants here have not raised the claim that the statute is overly broad. In response to the void-for-vagueness argument, the *Rogers* court said the following at 755 F.2d at 11, 12:

"[14][15] Defendant also attacks section 843(b) as void-for-vagueness both on its face and as applied. In particular, he urges that the statute is vague both as to the means by which the crime of using a communication facility is established, [fn10] and as to the intent necessary to prove a violation. The void-for-vagueness doctrine 'requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited [and] in a manner that does not encourage arbitrary and discriminatory *544 enforcement.' *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). As with overbreadth, a party seeking to overturn a statute for vagueness on its face must in essence establish that it

is constitutionally vague in at least a substantial number of the cases to which it could apply. See *Levas & Levas v. Village of Antioch,* 684 F.2d 446, 451 (7th Cir. 1982) ('a finding of unconstitutional vagueness cannot be based on uncertainty at the margins, or on a parade of bizarre hypothetical cases: problems of that order can be resolved in challenges to the ordinance as applied.') See also, *Kolender v. Lawson,* 103 S.Ct. at 1859 n.8; *Village of Hoffman Estates,* 455 U.S. at 494-95 102 S.Ct. at 1191-92. Furthermore, it is a commonplace that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Village of Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. at 1193. See also, *United States v. Bohonus,* 628 F.2d 1167, 1173-75 (9th Cir.) (rejecting vagueness challenge to mail fraud statute), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980).

"[16] To state the governing law on this issue is to reject the defendant's vagueness attack on section 843(b). That statute is simply not so vague as to create a meaningful danger of arbitrary law enforcement, and any problems with the notice it provides (which we think are in any event minimal) are alleviated by the intent requirement. Section 843(b) is no more, and possibly less, vague than other broadly phrased federal criminal statutes that we have consistently upheld over vagueness and overbreadth challenges. See *e.g., United States v. Feinberg,* 535 F.2d 1004, 1010 (7th Cir.) (mail fraud statute), *cert. denied,* 429 U.S. 929, 97 S.Ct. 327, 50 L.Ed.2d 300 (1976); *United States v. Dellinger,* 472 F.2d 340, 354-64 (7th Cir. 1972) (Anti-Riot Act), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *United States*

*v. Cerone,* 452 F.2d 274, 286 (7th Cir. 1971) (Travel Act). We reach the same conclusion here."

Here, the Pennsylvania counterpart of the federal statute sets forth in clear and straightforward language that using a telephone to cause, facilitate, or otherwise aid in the commission, or the attempted commission, of a felony is a criminal offense. Also, any concern that the statute could be interpreted to include use of a telephone or other communication facility that had the unanticipated consequence of facilitating the commission or attempted commission of a felony is relieved by the court in grafting thereon a scienter requirement as did the court in *Rogers,* whereby, in order for a conviction to stand, the defendant must be found to have intentionally or knowingly caused or facilitated the commission of the felony or the attempt to commit the felony through the use of the telephone. Defendants Sullivan, Moss and Austin argue that because an overt act is a required element for conspiracy under 18 Pa.C.S. §903, then an overt act should also be imposed as an element of this offense. However, that argument must fail because the statute in question does not criminalize use of a communication facility to engage in a conspiracy. The requirement of an overt act is a statutory element of the crime of criminal conspiracy created by the statute defining that crime, 18 Pa.C.S. §903(a)(e). The requirement of an overt act not contained in the statutory definition of criminal use of a communication facility and there is no reason to impose one, either for reasons of constitutional law or otherwise. The only question is whether the statute defines the crime in clear and unambiguous terms. Here, the court finds the statute to be clear in that one cannot use a telephone, or other communications facility, to commit, cause or

facilitate the commission of a felony or the attempt to commit a felony. Since the statute includes the language "or attempt thereof" proof of the commission of the underlying felony is unnecessary, and to cause or facilitate the attempt to commit a felony will meet the statutory requirements.

A strong presumption exists that duly enacted laws are constitutional and it is for the party advocating unconstitutionality to overcome the burden. *Commonwealth v. Cotto,* 562 Pa. 32, 753 A.2d 217 (2000); *Commonwealth v. Murray,* 749 A.2d 513 (Pa. Super. 2000); *Commonwealth v. Brown,* 741 A.2d 726 (Pa. Super. 1999). Here, defendants have failed to show the statute in question to be unconstitutional.

Each defendant has challenged the sufficiency of the evidence made by specific defendants. We will address them individually. However, the court delineates the elements of the offense as follows:

(1) Use of a communication facility, here the telephone.

(2) The purpose of such use being to commit, cause or facilitate the commission of, or the attempt to commit, a crime constituting a felony, the felony here being delivery of a controlled substance.

(3) That the defendants acted intentionally or knowingly in using the telephone for such prohibited purpose.

As to each count of criminal use of a communication facility against each defendant, each such count will be evaluated by the court as to the sufficiency of evidence utilizing the habeas corpus standard requiring the Commonwealth to produce sufficient evidence to constitute a prima facie case. Such standard shall be applied with regard to each motion filed by each defendant, regard-

less of how styled, that challenges the sufficiency of the evidence. However, since the motions challenging the sufficiency of evidence have been consolidated with the actual trial, when deliberating on a verdict, the court will apply the higher standard of proof beyond a reasonable doubt in arriving at a verdict. Therefore, the court notes that it is entirely conceivable that the court may find that sufficient evidence has been produced for purposes of sufficiency of the evidence, but in rendering a verdict, the court may nevertheless conclude that the Commonwealth has not met its burden of proof when held to the beyond-a-reasonable-doubt standard, in which case, the court would render a verdict of not guilty.

Furthermore, the court notes that as to each count, the stipulations that have been previously mentioned apply in that James Johnson, the other speaker with whom the defendant spoke in each recorded conversation, sold illegal substances in and around the City of New Castle during the time frame when each telephone call was intercepted and that the identification of the voices on the recorded conversations are established by way of the stipulations regarding the testimony of Agent Shaffer and Agent Bouye.

Furthermore, as to each offense, sufficient evidence will be found to exist if the proof amounts to proof sufficient to satisfy the elements of the underlying inchoate crime of attempt to deliver a controlled substance, in accordance with the construction adopted in the *United States v. Pierorazio,* 578 F.2d 48 (3d Cir. 1978), which specifically held that 21 U.S.C. §843(b) makes it a crime to use the telephone to attempt to possess a controlled substance with intent to distribute it as the attempt to

commit such inchoate crime constituted a felony. Here, such construction is even more compelling, as the federal statute did not utilize the term "attempt" and here the statute in question specifically includes utilizing the communication facility in an attempt, including to cause or facilitate the attempt to commit, of a crime constituting a felony. In short, utilizing a telephone in order to assist or arrange for a drug sale to take place would constitute utilizing the telephone to cause or facilitate the attempted commission of the crime of delivery of a controlled substance, which finding would meet the requirement of the statute. All that is required to prove criminal attempt in violation of 18 Pa.C.S. §901 is proof that the actor, with intent to commit a specific crime, does any act which constitutes a substantial step towards the commission of that crime. Case law has made it clear that section 901 of the Crimes Code applies to attempted violations of the Controlled Substance, Drug Device and Cosmetic Act, 35 Pa.C.S. §780-101 et seq. See *Commonwealth v. Mills*, 329 Pa. Super. 196, 478 A.2d 30 (1984); *Commonwealth v. Cunningham*, 248 Pa. Super. 219, 375 A.2d 66 (1977).

## THERESA WRIGHT

The defendant, Theresa Wright, is charged with two counts of criminal use of a communication facility. Count 1 is based on a telephone call Wright made to Johnson on October 12, 2001. Count 2 is based upon a telephone conversation that took place between Wright and Johnson on October 13, 2001.

In the telephone conversation of October 12, 2001, Johnson asked Wright if she had spoken with an uniden-

tified individual and then inquires, "What she say? . . . same weight?" Wright replied, "Yea" and Johnson ended the call by saying, "Alright." The stipulation provides that Agent Shaffer, Sergeant Bouye, and/or an expert would testify that this conversation consisted of Johnson asking Wright if the unknown individual wanted to purchase the same amount of drugs, indicating that Wright had set up a purchase between Johnson and this unknown individual before.

In the telephone conversation of October 13, 2001, Wright stated to Johnson, "You already got people, already deal with" and asked "Is it worth it, a, a eight ball, once a year?" Johnson replied, "That's the first time I ever." Wright also stated, "And Macri come up there and get him. Across the street, everybody talkin' about well how Macri know where he was." The stipulation provides that Agent Shaffer, Sergeant Bouye, and/or an expert would testify that this conversation consisted of Wright telling Johnson that he should be more selective about to whom he sells illegal drugs. Wright further warned Johnson that Lieutenant Macri of the New Castle Police Department was in the area where Johnson had been selling drugs. The court concludes that considering the content of the conversation and accepting at this juncture the conclusions contained in the expert testimony, the defendant in each of these cases was facilitating the attempted commission of the offense of delivery of a controlled substance. Under the construction of the act above explained, it is not necessary to show that an actual delivery did take place, only that the defendant's purpose in utilizing the telephone was to facilitate the attempted commission of that felony, *i.e.,* delivery of a controlled substance. In the conversation of October 12,

2001 it is apparent that Wright has arranged a drug deal for Johnson to consummate. In the conversation of October 13, 2001, defendant and Johnson discuss certain individuals who had been recently sold drugs by Johnson and Wright gives Johnson additional information about the presence of Lieutenant Macri and information regarding to whom Johnson should be selling drugs to, in order to facilitate Johnson's attempts at further drug deliveries.

## ROBERT SULLIVAN

The defendant, Robert Sullivan, is charged with two counts of criminal use of a communication facility based upon two separate telephone conversations, one occurring on October 12, 2001 and the other on October 13, 2001. Each telephone conversation forms the basis for each separate count.

Relative to Count 1, on October 12, 2001, Sullivan telephoned Johnson and stated, "I need one of them when you get a chance" and Johnson replied, "Alright, I'll hit youns up." It is stipulated that Agent Shaffer, Sergeant Bouye and/or an expert would testify that this conversation consists of an inquiry by Sullivan about purchasing drugs from Johnson and a confirmation from Johnson that he will get in contact with Sullivan when he has drugs available for purchase. This inference is further buttressed by the second telephone conversation that took place on October 13, 2001 and forms the basis for Count 2.

Relative to Count 2, during the second conversation that occurred on October 13, 2001, Sullivan called Johnson and stated he wants an "eight for me" and re-

peated himself by stating an "eight ball." Johnson replied by stating, "Ah, alright. You at home?" Sullivan answered, "Yes," and Johnson stated, "Alright. In a minute." The stipulation of facts provides that Agent Shaffer, Sergeant Bouye and/or an expert would testify that this conversation consists of Sullivan asking to purchase cocaine in the amount of 1/8 ounce from Johnson, and Johnson informing Sullivan that he would come to his home in a minute.

Additionally, and in support of the inference referred to in Count 1, Sullivan also inquired in this conversation where Johnson has been and why he had not gotten in touch with him, followed then by the conversation where Johnson requested what Sullivan wanted. Tying the content of these two conversations together, a permissible inference is that when Johnson states on October 12, 2001 that "I need one of them," he is clearly referring to his desire to purchase drugs.

The surveillance further reveals that surveillance was conducted after the phone call and Johnson was seen entering Sullivan's home a short period after the phone call and leaving within a few minutes, which is consistent with the type of activity that would be consistent with someone delivering illegal drugs.

The stipulated evidence supports the conclusion that on October 12, 2001 and on October 13, 2001, Sullivan telephoned Johnson to cause or facilitate the attempted unlawful delivery of a controlled substance from Johnson to sell them.

## DANA AUSTIN

The defendant, Dana Austin, is charged with four counts of criminal use of a communication facility. Count

1 is based upon a telephone conversation between defendant Austin and Johnson on October 11, 2001 at 15:48; Count 2 is based upon a second telephone conversation that occurred on October 11, 2001 at 17:45. On October 23, 2001 at 16:07, Johnson telephoned Austin and left a message on Austin's answering machine. Count 3 relates to a telephone conversation between defendant Austin and Johnson on October 23, 2001 at 17:48. Count 4 relates to a telephone conversation occurring between defendant Austin and Johnson on October 24, 2001 at 16:25. The common thread between all the telephone conversations is that defendant Austin and Johnson are discussing Austin supplying Johnson with money so that Johnson can make a purchase of drugs from "Big Lee" from New York and to thereby provide the illegal drugs to defendant Austin.

In the first phone call, defendant Austin telephones Johnson to inform him that a woman friend had stolen money from his truck. Johnson replies that he "needed that change." Defendant Austin assures Johnson that as soon as he can obtain the money, he will bring it to Johnson. When one considers all of the intercepted conversations together, it is clear that Johnson wants Austin's money in order to purchase illegal narcotics. Johnson made a phone call on October 16, 2001 to "Big Lee" in the Bronx, New York to arrange for a purchase of narcotics from "Big Lee".

The second telephone conversation occurring approximately two hours later on October 11, 2001 is a follow-up call by Johnson to confirm when defendant Austin is going to "get straight" meaning get the money that Austin owes to Johnson. The third conversation, which oc-

curred on October 23, 2001 at 16:07 is a call where Johnson calls defendant Austin and leaves a message inquiring, "Did you get that yet?"

In the fourth telephone conversation, defendant Austin calls Johnson and inquires about "getting some now." Johnson responds, "I'll have somethin' for ya."

In the final phone call occurring on October 24, 2001 at 16:25, Johnson states to defendant Austin "What's up?" Austin responds, "Check you out later" and "For sure I'm grab some soft last night" and repeats, "I grabbed some soft last night." "Soft" is a street term for powdered cocaine. Austin further states that he was able to get the "soft" "a little quicker than the hard." "Hard" is a street term of crack cocaine. Defendant Austin is telling Johnson that he was able to obtain powdered cocaine the night before and once he sells it, Austin will be able to provide Johnson the money that he owes him. Thus, defendant Austin was able to obtain illegal drugs from an alternative source thereby enabling Austin to sell those drugs to have the money for Johnson after the sale of those illegal substances.

Taking all of the facts contained in the stipulation together allows the inference that Johnson is engaging in the illegal trafficking of controlled substances and that defendant Austin is facilitating the attempts to acquire illegal contraband by Johnson by providing Johnson to provide the funds to do so. In exchange, defendant Austin desires to obtain some of the illegal substances from Johnson for Austin's own purposes. The purpose of all of these telephone conversations, which are the subject of the various counts, is Austin's attempt to facilitate the illegal delivery of drugs to Johnson by defendant Austin

providing money to Johnson for that purpose. The use of the telephone in each instance to facilitate the attempt to acquire the illegal drug activity brings defendant Austin's conduct within the provisions of criminal use of a communications facility.

## ANTHONY MOSS

The defendant, Anthony Moss, is charged with seven separate counts of criminal use of a communications facility, specifically Count 1, Count 2, Count 6, Count 7, Count 8, Count 11 and Count 12. Counts 1, 2, 6, 7 and 8 all relate to conversations between a confidential informant and the defendant Moss to arrange for the sale and delivery of illegal controlled substances from Moss to the confidential informant, which did in fact occur. The only conclusion that can be reached from the stipulation is that the telephone was used to make the arrangements for the controlled buys that subsequently did occur between the confidential informant and the defendant. There is nothing ambiguous in the content of those telephone conversations and each conversation is summarized in the police reports pertaining to the proceedings against the defendant Moss. Counts 12 and 13 deal respectively with telephone conversations that occurred on October 14, 2001 and October 26, 2001. In the telephone call of October 14, 2001, Defendant called Johnson and inquired of whether or not Johnson had any illegal drugs to sell by asking, "What can you do for me?" Johnson's reply is "Tomorrow." In the second telephone call, Moss inquires, "Ain't nothing jumpin'?" to which Johnson replies negatively. Moss then states, "Goddamn body, whatcha doin'?" to which Johnson replies that he is "just

waiting around." Expert testimony provides the explanation that the short vague nature of the conversation shows that Moss and Johnson deal with each other on a regular basis in the purchase by Moss of illegal drugs from Johnson and that Johnson is familiar with what Moss wants and the price. In addition, in the second conversation, the expert testimony opines that defendant Moss wants to buy illegal drugs and Johnson does not have any to sell but is waiting on a new shipment, which is confirmed by another telephone conversation between Johnson and "Big Lee" which indicates that "Big Lee" will be bringing a shipment of illegal drugs down to Johnson.

In both conversations, defendant Moss telephoned Johnson to facilitate the attempted sale of illegal drugs from Johnson to Moss. The use of the telephone for this purpose is within the prohibition of criminal use of a communications facility.

## SCOTT KING

The defendant, Scott King, is charged with two counts of criminal use of a communications facility, Count 1 relating to a telephone conversation of October 12, 2001, and Count 2 relating to a telephone conversation of October 25, 2001.

The substance of both telephone conversations is the inquiry by defendant King of Johnson about purchasing illegal drugs from Johnson.

In the first telephone call, defendant King states, "Hey, anything?" to which Johnson replies, "I'm coming through shortly" and "One's a hizzie. I only got hard." The term "hard" is a street term for crack cocaine. The

term "hizzie" is a street term for one-half ounce of crack cocaine. King then states that he would like some and states, "Do me half that" meaning that King desires to purchase one-quarter ounce of crack cocaine.

In the second telephone call, defendant King again inquires about purchasing illegal drugs to which Johnson replies, "Ain't nothin' happenin' right now?" but that he will "hit" King up. This means that Johnson does not have illegal drugs in his possession for sale at the time but he will contact defendant King when he acquires any illegal drugs to sell. The expert testimony illustrates that individuals who deal with one another in an effort to purchase and sell illegal drugs speak in short, vague terms and each party understands what the conversations are referring to without being specific in a language.

In each instance, the evidence allows the inference that defendant King contacted Johnson on each occasion to discuss the illegal sale of controlled substances from Johnson to defendant King. These conversations constitute facilitating the attempted illegal delivery of controlled substances.

## CONCLUSION

For the reasons above set forth, the court having concluded that the statute in question, criminal use of a communications facility, is constitutional and that the stipulated evidence is sufficient to support each count charging a violation of criminal use of a communications facility against each defendant, the court will issue a separate order which will deny all pending motions of the defendants challenging the constitutionality of the statute and the sufficiency of the evidence relative thereto.

## ORDER

And now, February 14, 2003, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's [Robert John Sullivan] amended motion for writ of habeas corpus and the defendant's motion for judgment of acquittal and specifically defendant's challenge to the constitutionality of the statute, criminal use of a communications facility and the sufficiency of the evidence relative thereto are each denied.

## ORDER

And now, February 14, 2003, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's [Dana Q. Austin] amended motion for writ of habeas corpus and the defendant's motion for judgment of acquittal and specifically defendant's challenge to the constitutionality of the statute, criminal use of a communications facility and the sufficiency of the evidence relative thereto are each denied.

## ORDER

And now, February 14, 2003, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's [Anthony Moss Sr.] amended motion for writ of habeas corpus and the defendant's motion for judgment of acquittal and specifically defendant's challenge to the constitutionality of the statute, criminal use of a communications facility and the sufficiency of the evidence relative thereto are each denied.

## ORDER

And now, February 14, 2003, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's [Theresa Wright] motion for writ of habeas corpus and motion in limine, and specifically the defendant's challenge to the constitutionality of the statute charging criminal use of a communications facility and to the sufficiency of the evidence relative thereto are each denied.

## ORDER

And now, February 14, 2003, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's [Scott A. King] motion for writ of habeas corpus and motion to quash information, and specifically the defendant's challenge to the constitutionality of the statute charging criminal use of a communications facility and to the sufficiency of the evidence relative thereto are each denied.